# Brown v. The State.

*Prosecution for Failure to Work on Public Road.*

| | |
|---|---|
| 63 | 97 |
| 112 | 54 |
| 113 | 505 |
| 63 | 97 |
| 120 | 358 |
| 63 | 97 |
| 123 | 666 |
| 63 | 97 |
| 134 | 143 |

1. *Prosecution before justice of the peace; sufficiency of complaint and warrant.*—In a criminal prosecution before a justice of the peace, technical accuracy in the description of the offense, either in the complaint or in the warrant, is not required: it is sufficient under the statute (Code, §§ 4647, 4651-2), as it would be without any statute, if the offense is designated by name only, or described by words from which it may be inferred.

2. *Failure to work public road; sufficiency of statement, or complaint.*—When the affidavit or complaint before the justice of the peace, by which the prosecution is commenced, charges the defendant with "the offense of failing to work the road," a statement, or complaint, filed in the Circuit Court on appeal, which charges that "he did willfully fail and refuse, after legal notice, to work the public road, either in person or by substitute, without a sufficient excuse therefor, and being liable to road duty," is not a departure; nor is it demurrable, because it does not describe the road, nor otherwise insufficient or defective.

3. *Evidence of list of hands for road duty.*—The list of hands for road duty, presented by the apportioners to the overseer, would not, if produced, be evidence of the defendant's liability to road duty, nor of any other material fact in the prosecution against him for failing to work the road; consequently, the fact that his name was on the list may be proved by oral evidence.

4. *Right to poll jury; when waived.*—In all criminal cases, whether of felony or misdemeanor, the right of polling the jury is secured to either party by the statute (Code, § 4910); but this right may be waived by the prisoner, in a case of misdemeanor, or it may be lost by the failure to assert it at the proper time; and it will be considered as waived, when his counsel consent, in his presence, that the verdict of the jury may be returned to and received by the clerk during a brief recess of the court, and it is so returned and received, and the jury discharged.

FROM the Circuit Court of Shelby.

Tried before the Hon. JOHN HENDERSON.

This prosecution was commenced before a justice of the peace, and was removed into the Circuit Court by appeal on

the part of the defendant. The warrant of arrest, issued by the justice, charged the defendant with "the offense of failing to work the road;" and the offense was thus described in the affidavit, on which the warrant was founded. The complaint, or statement, filed in the Circuit Court by the solicitor, alleged that "Cecil Brown, within twelve months before the commencement of this prosecution, did willfully fail and refuse, after legal notice, to work the public road, either in person, or by substitute, without a sufficient excuse therefor, and being liable to road duty; against the peace," &c. The defendant moved to strike this statement from the files, on the ground that it did not correspond with the affidavit and warrant by which the prosecution was commenced; and this motion being overruled, he demurred to the statement, assigning as causes of demurrer—1st, "that it did not sufficiently charge that the defendant had legal notice;" 2d, "that it did not specify or describe the said road." The court overruled the demurrer, and the defendant pleaded not guilty.

On the trial, as the bill of exceptions states, C. C. Wells was introduced as a witness on the part of the State, who testified, "that he was an overseer on the Selma and Montevallo road; that he knew the defendant, and had warned him to work the said public road, on the — day of ———, 1877; that defendant did not appear, either in person or by substitute, at the place appointed for the road hands to meet, until about three o'clock in the afternoon, when one Henry Keenan appeared, with a hoe, and said he had come to work the road for said Brown; that he put said Keenan to work on the road, and he continued to work until the afternoon of the day before that on which the working of the road was completed, when said Keenan quit the road, and did not again return. The solicitor asked said witness, if the defendant's name was on his list of hands, furnished him by the apportioners; to which question the defendant objected, on the ground that the list was in writing, and was the best evidence of that fact, and that it was not proved to have been lost or destroyed; which objection the court overruled, and the defendant excepted; and the witness then answered, that the defendant's name was on his list. Said witness also testified, on cross-examination, that he did not inform defendant of the fact that his substitute had left the road, until the working on the road was over; and that he was not certain that he had himself warned defendant, but thought he had, as he had warned most of the hands, though he might have got some one else to warn him." On the part of the defendant an admission was introduced, as to the testimony of one

George King and others, material witnesses, to the effect
"that on the 10th September, 1877, defendant employed said
King to work for him on said road, and furnished him with
a hoe; that said King, at about 7:30 on the morning of that
day, started down said road in view of defendant, in the di-
rection of the place appointed by the overseer for the hands
to meet; that just before reaching the place, he met Mr.
Richard Steele, on whose place he was living, and who told
him to go to the field and pick cotton; that said King there-
upon changed his course, and went to the cotton-field, in-
stead of working the road; and that said King did not at any
time inform defendant of his failure to perform his contract
to work the road for said defendant."   Also, a similar admis-
sion as to the testimony of Henry Keenan, to the effect that,
if present, he would swear "that defendant employed him
to work said road on the 11th September, 1877; that he did
work said road, as the substitute of said defendant, for one
day and a half, and only left the road on account of being
sick; and that he did not inform defendant that he was sick,
and had left the road, until after the working of said road
was over."

"This being all the evidence, the court charged the jury,
'that if the evidence satisfied them that defendant was liable
to work the road, and that he had been legally warned to do
so, and that he failed either to work, or to send a substitute
in his place, in the absence of any excuse for the failure, the
law presumes it was willful.'   The court charged the jury,
also, 'that the law allowed one liable to work the road to
hire or send a hand to work in his place; and if the evidence
satisfies them that defendant hired a hand to work in his
place, and had good reason to believe that he was working in
his place, and did believe so, then defendant would not be
guilty of willfully failing to work the road; but, unless de-
fendant did have good reason to believe that the person em-
ployed by him was working the road, it was his duty, either
to work himself, or to see that his hand worked; and if he
failed to do so, in the absence of a reason for doing so, the
law presumes the refusal was willful.'"   To each of these
charges the defendant excepted.

"The papers in the case were then handed to the jury, and
they retired to make up their verdict.   It being about one
o'clock, the court asked the counsel for defendant, if he would
consent for the clerk to receive the verdict during the recess,
in the absence of the defendant; and the counsel agreed
that it should be so received.   Thereupon, the court ordered
an adjournment, or recess, for dinner, of one hour.   The
court was called at about two o'clock, and the clerk read the

verdict.   The defendant then asked the court to poll the jury, and the court ordered the sheriff to call the jury which had tried the case ; and as the jury were coming into the jury-box, the court asked the solicitor, if he objected to the jury being polled at that time ;. and the solicitor objecting, the court refused to allow the jury to be polled.   Several of the jury then asked the court, through an attorney, to allow them to change their verdict, which the court had not then recorded.   The court refused to allow them to change their verdict, and the defendant excepted.

Bowdon & Knox, for the defendant.—1. The affidavit on which the defendant was arrested and tried before the justice, charged no offense.—Code, §§ 1661, 4253 ; *State v. Brown,* 4 Porter, 412 ; 1 Chitty's Crim. Law, 172 ; *Noles v. State,* 24 Ala. 672 ; *Duckworth v. Johnson,* 7 Ala. 578 ; *Crumpton v. Newman,* 12 Ala. 199.

2. The statement filed in the Circuit Court was an entire departure from the affidavit, and should have been struck from the files.   As an indictment, for which it is a substitute, it was demurrable for the causes specified.—*Brown v. Mobile,* 23 Ala. 722; *Francois v. State,* 20 Ala. 83; 1 Chitty's Crim. Law, 169 ; Archb. Crim. Pl. 40 ; *Graves v. State,* at present term.

3. The list of hands apportioned to the road was not only in writing, but was required by law to be in writing ; and parol evidence of its contents ought not to have been received, without a proper predicate.—*Blackwell v. Thompson,* 2 Stew. & P. 348 ; *Wilson v. State,* 52 Ala. 299.

4. As to the error in the charge of the court, see *Smith v. The State,* 55 Ala. 11; 1 Greenl. Ev. § 44.

5. The right to poll the jury, in every criminal case, is secured by statute, and is a valuable right.   The defendant had not waived that right, nor was it lost by the consent of his counsel that the verdict might be received by the clerk during the recess of the court.—*Hughes v. State,* 2 Ala. 102 ; *Brister v. State,* 26 Ala. 132 ; *Wright v. State,* 11 Ind. 569 ; *Fox v. Smith,* 3 Cowen, 23 ; *United States v. Potter,* 6 McLean, 186 ; 1 Bishop's Crim. Pro. 1003.

6. The jurors had the right to change their verdict, at any time before it was recorded, and the court erred in refusing to allow them to change it.—1. Bishop's Crim. Pro. § 1003 ; *Rex v. Parkin,* 1 Moody, 45 ; *State v. Austin,* 6 Wisc. 205.

H. C. Tompkins, Attorney-General, for the State.—1. In criminal proceedings before a justice of the peace, the same forms may be. used as in the County Court, and technical accuracy is not required.—Code, § 4699.   Besides, such cases are to

[Brown v. The State.]

be tried *de novo* on appeal, and the only question is the guilt or innocence of the accused.—Code, § 4722.

2. The statement filed in the Circuit Court is more definite and specific than that prescribed by the statute in the analogous case of an indictment against the overseer of a public road.—Code, § 4810.

3. That the fact of defendant's name being on the list of hands might be shown by oral evidence, see *McGehee v. Hill*, 1 Ala. 140 ; *P. & M. Bank v. Borland*, 5 Ala. 531 ; Phil. Ev. 303.

4. The charges to the jury were at least as favorable to the defendant as the law authorized, and he can not complain of them.

5. The right to poll the jury was lost, and the jurors themselves had no power to change their verdict.—3 Wharton's Amer. Crim. Law, § 3195.

BRICKELL, C. J.—There was no error in overruling the motion to strike the statement or accusation from the files. It did not depart from the warrant and complaint issued by the justice of the peace. These simply designated by name the offense with which the defendant was charged, and the designation satisfied the requirements of the statutes. Independent of statutory provision, technical accuracy in such proceedings, had before a justice of the peace, was not expected or required ; and they were regarded as sufficient, whenever, upon a fair, reasonable construction of their language, a charge of a known criminal offense could be gathered.—*Crosby v. Hawthorne*, 25 Ala. 221. A complaint of the commission of a criminal offense, made before a justice, is now, by the statute, defined as "an allegation that a person has been guilty of a designated public offense" (Code of 1876, § 4647) ; and a warrant, issued upon it, is sufficient, if it designates the offense by name, or describes it, or if it employs terms from which the offense may be inferred.—Code of 1876, §§ 4651, 4652.

2. On an appeal from a judgment of conviction, rendered by a justice of the peace, the trial is *de novo*, and governed by the rules and regulations prescribed for trials of appeals from the County Court.—Code of 1876, §§ 4700, 4701, There is no indictment, or presentment by the grand jury. A brief statement, signed by the solicitor, of the cause of the complaint, stating the offense charged, is sufficient.—Code of 1876, § 4729. It is obvious that the statutes intend to dispense with the fullness and precision in describing the offense, which was necessary in an indictment at common law. In a great degree, they have reduced indictments to a bare designation of the offense charged, dispensing with averments

of the facts constituting it. An overseer or apportioner of a public road may by indictment be charged, in general terms, with a failure to discharge his duties, and any acts or omissions, constituting a neglect of duty, may be proved on the trial.—Code of 1876, § 4810. The statement filed by the solicitor is fuller than would be an indictment found under this statute. It avers generally the facts which make up the offense, of which the defendant was convicted before the justice, and more fullness and precision of statement cannot be required, unless the statement, intended to be brief, is governed by different rules than prevail in reference to indictments.

3. The general principle, that oral shall not be substituted for written evidence of a fact, has no application, when the writing, if produced, would not be competent evidence of the fact to which it relates. If the list of hands, presented to the overseer by the apportioner, had been produced, it would not have been evidence of the liability of·the defendant to road duty, nor of any other material fact in the case.

The instructions to the jury were as favorable to ·the defendant, as the facts would justify.

4. In all criminal cases, whether of felony, or misdemeanor, the right of polling the jury is secured to either party by statute. The statute reads : "When a verdict is rendered, and before it is recorded, the jury may be polled, on the requirement of either party ; in which case, they must be severally asked, if it is their verdict ; and if any answer in the negative, the jury must be sent out for further deliberation."—Code of 1876, § 4910. The Code of 1852 first introduced this provision.—Code of 1852, § 3604. The right of polling the jury, prior to the statute, depended upon the common law. In *Hughes's case,* 2 Ala. 102, it was held, in a case of felony, that it was the clear right of the prisoner to poll the jury, and the reception of a verdict of guilty in his absence was an error, of which he could take advantage when brought up to receive sentence, and which on error would reverse the judgment of conviction. In *Brister's case,* 26 Ala. 131, the case originating after the adoption of the Code, and which was also a felony, no reference is made to the statute ; but the right of the prisoner to poll the jury was distinctly affirmed, on the authority of *Hughes's case;* and it was said, the reason his presence, when the verdict was rendered, was indispensable to support a judgment of conviction, was the right to examine the jury by poll, ascertaining whether each juror assented to the verdict. In *Waller's case,* 40 Ala. 332, a conviction of felony, without reference to the statute, it was held, that it was erroneous to allow the jury

to return their verdict to the clerk, during a recess of the court, in the absence of the prisoner, though his counsel had in open court consented thereto.

There was much conflict of decision in the American courts, as to the right of a prisoner in any case, whether of felony or misdemeanor, to poll the jury; some authorities affirming the right, and others declaring that it depended upon the discretion of the court. There is a very full collection of them in an interesting article, under the title *Polling the Jury*, in the first number of the new series of the Southern Law Journal and Reporter. The statute was intended to establish the right in all criminal cases, removing any doubt and uncertainty as to its existence. It is a right, which, however, like the right of trial by jury, may be waived by the prisoner in cases of misdemeanor; and in any case, it may be lost, by the failure to assert it at the proper time.

The consent given in this case was, that if the jury agreed upon their verdict, during a brief recess of the court, it should be returned to, and received by the clerk, in the absence of the defendant. The verdict, under this agreement, was returned to, and received by the clerk, and the jury discharged. Nothing less can be intended from the consent, than that the verdict, if returned to, and received by the clerk, during the recess of the court, in the absence of the defendant, and the jury discharged, should be of the same validity and operation, as if all this had occurred in open court, and in the presence of the defendant. It is unlike a case in which the jury return to the clerk, by consent, a sealed verdict, which can be opened, and its contents made known, only in the presence of the defendant, and of the court, and by its authority. The consent, to have any effect, must have the construction we have indicated. If the verdict had been of acquittal, it would be scarcely insisted that the State had not lost the right of polling the jury; and its right is coequal and coextensive with that of the accused under the statute. There seems to us as little room for doubt, that the accused must be held to have lost the right, or, rather, to have waived it, and to have intended to waive it. What else could have been intended, where the consent extends to the delivery of an open verdict to the clerk, in the absence of the accused, to be followed by a discharge and dispersion of the jury, which he must have known would be consequent on the rendition of the verdict? There could be no polling of the jury in his absence, and none after their discharge and dispersion. When the verdict is returned, and received by the court, and the jury discharged, a memorandum of it is made, from which the record is subsequently made up. The memorandum is

the record, to which the statute refers ; and that, it must be intended, the defendant consented should be made in his absence.   Agreements deliberately made, as to the conduct and proceedings in the cause, with the sanction of the court, should be enforced according to their spirit and meaning, against defendants in criminal, as well as against suitors in civil cases.   No just, discreet judge would permit, by agreement, extravagant departures from the usual mode of proceeding, or which placed the defendant in peril of a fair and impartial trial.   Provisions of law, intended alone for his benefit, he may often, for his own convenience, waive.  Secondary may, by his consent, be substituted for primary evidence.   Admissions of the evidence of absent witnesses he may make, rather than submit to a delay of the trial until the witnesses can be personally produced.   Papers, constituting a part of the files, may, if lost, be substituted with his consent, without waiting a personal application, preceded by notice to him.   There is little room for distinguishing between the capacity to consent, and to waive, in civil and in criminal cases, as to all matters which pertain merely to the conduct of the trial.   The accused is attended with counsel, who are capable of advising him ; and has the additional protection of the court, which would never sanction any agreement, that would operate practically to injure him ; and if such was its operation, would not hesitate to relieve him from it.   The consent was given by the counsel ; but it was in the presence of the defendant, and without dissent on his part.   The opportunity of a verdict of acquittal was obtained by it, and it is too late for him now to dissent, because the verdict is adverse.

We do not intend departing from *Waller's case*, which was a conviction of felony.   But when, in cases of misdemeanor, the defendant, through his counsel, deliberately consents that, in his absence, the jury may return a verdict, and be discharged, he waives, and must intend to waive, his right of polling them.   Polling would become a hindrance to the administration of justice, and cast upon it reproach, if it could be exercised after a discharge of the jury, and after the publication of their verdict, when, without offending the order of the court, they could be approached, and tampered with. Tampering may be corrupt, or it may be by appeals to the sympathy of individual jurors, when corruption cannot be imputed.   From it in any form the jury is guarded while under the control of the court.   After their dispersion, the court loses control over them, and cannot again remit them to their deliberations.

We find no error in the record, prejudicial to the defendant, and the judgment must be affirmed.