STATE OF MINNESOTA ex rel. WILLIAM CORCORAN v. CHARLES E. CHAPEL, Sheriff.[1]

February 6, 1896.

Nos. 9888—(357).

Constitution—Validity of Game Law.

The provision of Laws 1893, c. 124, § 9, as amended by Laws 1895, c. 115, § 5, that "it shall be unlawful for any person to consign by common carrier to any commission merchant or sale market, at any time, any elk, moose, caribou or deer, or any part thereof except the skin or head" is valid, and not in violation of either the state or federal constitution.

Appeal by relator from an order of the district court for Ramsey county, Egan, J. Affirmed.

*Akers & Williams*, for appellant.
*Pierce Butler* and *Wm. Ely Bramhall*, for respondent.

MITCHELL, J. Appeal from an order of the district court denying the petition of the relator, on a writ of habeas corpus, for his

[1] Reported in 66 N. W. 205.

discharge from the custody of the respondent, as sheriff of Ramsey county.

The relator is held under a commitment issued upon a conviction of a violation of Laws 1893, c. 124, § 9, as amended by Laws 1895, c. 115, § 5, which provides "that it shall be unlawful for any person to consign by common carrier to any commission merchant or sale market, at any time, any elk, moose, caribou or deer, or any part thereof except the skin or head." He claims that this provision is unconstitutional, as class legislation, and is in violation of both the federal and state constitutions, because it deprives the citizen of his privileges and property without due process of law.

An analysis of the provision shows that there is no discrimination between persons in the matter of killing game, or in the use. or transportation of it after it is killed. Any one may kill or buy it during the open season, and every one is allowed equal privileges for shipping it after it is thus acquired; also, when a common carrier is not used as the means of transportation, every one is allowed to ship it to any one for any purpose; also that, when it is not consigned to a commission merchant or sale market, any means of transportation, either a common or a private carrier, may be used. The only restriction is that, when consigned to a commission merchant or sale market,—that is, to one handling game for sale,— it cannot be consigned by a common carrier. In its practical working, the only effect of the law is to limit the means of transportation of game killed for the market, and consigned to commission men for sale, either for themselves or on account of the consignors. The result would be to prevent, in a great measure, such game from becoming an article of general commerce, and thereby materially decrease the amount killed. The object of the statute, as its title indicates, is to protect and preserve the game of the state from extinction or undue depletion. The most usual method adopted to effect such an object is to limit in some way the amount of game killed. One way of accomplishing this is to limit the open season. But this is not always effectual; for, even if the open season is reduced to the shortest reasonable period, the number of hunters, especially those who hunt for the market, may be so great as to unduly deplete the game even during that period. Another method resorted to is to limit the amount that any one person may kill,

and to restrict the modes of killing. Experience proves that such provisions are difficult to enforce, because of the difficulty of procuring the evidence of their violation, especially in the case of large game, which is usually killed in the secrecy of the forest.

It is a matter of common knowledge that the rapid depletion of game, especially large game, such as deer, is caused by its indiscriminate slaughter by "pot hunters," who kill it for the general market. The practical question which confronted the legislature was how to prevent the undue depletion of such game from this cause. This could only be done by adopting some means that would, as far as possible, prevent the game from becoming a subject of commerce in the general market, and thereby reduce the amount that would reach such market. It is also a matter of common knowledge that the facilities for regular, rapid, and cheap transportation furnished by common carriers, especially railways, are practically essential to the business of these pot hunters, and furnish its chief stimulant and aid, and that, without this method of transportation, hunting for the general market would be quite limited, and the amount of game killed very much reduced. Hence, the enactment of the provision under consideration. The legislature has a very large discretion in such cases as to the means to be adopted to effect the desired object, and, if these means do not violate any constitutional provision, the courts will never set up their judgment against that of the legislature as to whether they are the best or most equitable means that might have been adopted. Neither will the courts declare a law invalid, unless it is in plain violation of some express provision of the constitution. All reasonable doubts must be solved in favor of the legislative action.

The provision under consideration certainly has a natural and reasonable tendency to preserve the game of the state from extinction or undue depletion, and we cannot say that the restriction upon the method of transporting game consigned to commission men or sale markets is arbitrary, or not founded upon an apparent natural reason, suggested by the necessities of the case. If the law is otherwise unobjectionable, the mere fact that, in its operation, it may incidently deprive common carriers of some business which they would otherwise get, or may render it more difficult for those to

procure game in the market who live at a distance from those parts of the state where it is killed, will not render the law invalid. If this restriction was sought to be applied to some article in which the citizen had an absolute and unlimited right of private property, it could not be sustained. But wild game, before it is reduced to possession, belongs to the state in its sovereign capacity, in trust for the whole public. Hence, in the exercise of its police power, the state may impose such limitations and restrictions upon the right of property in it, after it is taken or killed, as will tend to prevent its extermination or undue depletion. State v. Rodman, 58 Minn. 393, 59 N. W. 1098. One who kills a deer does not acquire an absolute and unlimited right of property in it. His right of property, from its very inception, is subject to all the limitations imposed upon it by the police laws of the state, one of which is the restriction upon the mode of transportation under consideration. Hence, no question of taking private property without due process of law is involved.

Order affirmed.