Belknap, }
June, 1900. }

## STATE *v.* DOW.

The statute prohibiting any person to engage in the business of fishing for trout in the waters of this state, with intent to sell or trade fish so caught, is a valid exercise of the police power, and not in conflict with the constitution.

INDICTMENT, for engaging in the business of fishing for lake trout, with intent to sell the fish caught. It was agreed that, if

the statute under which the indictment was found is constitutional, a verdict should be directed for the state.

*Frank M. Beckford,* solicitor, for the state.

*Jewell, Owen & Veazey,* for the defendant.

PEASLEE, J.　"The power to enact 'fish and game' laws was exercised previous to the adoption of the constitution, and it has been so long used, and so beneficially for the public, that it ought not now to be called in question." *State* v. *Roberts,* 59 N. H. 256, 257.　"The duty of preserving the fisheries of a state from extinction, by prohibiting exhaustive methods of fishing, . . . is as clear as its power to secure to its citizens, as far as possible, a supply of any other wholesome food." *Lawton* v. *Steele,* 152 U. S. 133, 139.　"From the earliest traditions, the right to reduce animals *feræ naturæ* to possession has been subject to the control of the law-giving power." *Geer* v. *Connecticut,* 161 U. S. 519, 522. "The protection and preservation of game has been secured by law in all civilized countries, and may be justified on many grounds." *Phelps* v. *Racey,* 60 N. Y. 10, 14; *Lawton* v. *Steele,* 119 N. Y. 226, 234.

In the exercise of this power, the legislature regulates the time and method of taking fish or game, and prohibits the taking by one who has already taken a certain quantity. *State* v. *Chapel,* 64 Minn. 130.　The authority to enact these limitations flows from the power to prohibit; and this rests upon the proposition that the individual has no vested right in fish and wild game not reduced to possession. *State* v. *Roberts,* 59 N. H. 484, 486.

In the present instance, the legislature has enacted that "any person who shall, for the whole or any part of the time, engage in the business or occupation of fishing on any of the streams or ponds of this state for the brook or speckled trout, or in the lakes thereof for lake trout, with intent to sell or trade fish so caught," shall be punished.　Laws 1899, c. 22.　The defendant claims that this law is unconstitutional, assigning as one reason for his contention that the act operates to give the wealthy sportsmen more than their just and equal share of the fish.　It is not apparent in what way the defendant is denied any right granted to others.　If they may fish, so may he; and the prohibition of his fishing with intent to sell the fish to them equally enjoins them from fishing with intent to sell their fish to him.　"The statute makes no discrimination. . . . Everybody is prohibited."　True it is that the prohibition affects some more than others.　"Such is necessarily the effect of all restrictive laws. . . . The equality

of the constitution is the equality of persons and not of places, — the equality of right and not of enjoyment. A law that confers equal rights on all citizens of the state, or subjects them to equal burdens, and inflicts equal penalties on every person who violates it, is an equal law." *State* v. *Griffin*, 69 N. H. 1, 29, 30.

- It is further argued that the act is not calculated to promote the end sought, that it does not protect the fisheries of the state, and so, not being an exercise of the police power, is an unwarranted invasion of the private rights of individuals. This claim has no foundation in fact. The restraint of the acts of those who make a business of fishing must inevitably tend to decrease the number of fish caught, and whether this was a wise means by which to accomplish the legitimate end was a question for the legislature. *State* v. *Marshall*, 64 N. H. 549 ; *State* v. *Griffin*, 69 N. H. 1; *Phelps* v. *Racey*, 60 N. Y. 10 ; *American Express Co.* v. *People*, 133 Ill. 649 ; *Allen* v. *Wyckoff*, 48 N. J. Law 90. "It is a matter of common knowledge that the rapid depletion of game . . . is caused by indiscriminate slaughter by 'pot hunters,' who kill it for the general market. The practical question which confronted the legislature was how to prevent the undue depletion of such game from this cause. This could only be done by adopting some means that would, as far as possible, prevent the game from becoming a subject of commerce in the general market." *State* v. *Chapel*, 64 Minn. 130, 132.

The defendant cites no case to sustain his position ; but in the dissenting opinions of Justices *Field* and *Harlan* in *Geer* v. *Connecticut*, 161 U. S. 519, it was reasoned that a restriction upon the sale of game lawfully killed was an unjustifiable interference with the right of property thereby acquired in the game, that upon the killing the property became absolute, and that a state could not enact that the right acquired should be a qualified one only. This reasoning is satisfactorily answered by that of the majority of the court, and by the reasoning of state courts in cases which have come before them.

"It being conceded that the state, under its general police power, may lawfully prohibit the killing of the game birds in question, it may, of course, control such killing and the times and purposes thereof. It may lawfully enact that they may be killed and sold, and held for sale only for domestic consumption. The state, in the exercise of its power, instead of prohibiting the killing altogether, permits the person killing them to acquire only a qualified right in them." *State* v. *Geer*, 61 Conn. 144, 152 ; *State* v. *Chapel*, 64 Minn. 130.

" The legislature has never conferred an absolute property in quail upon the person who might kill the same. The killing of quail

. . . was permitted, not for sale,—not to go upon the market as an article of commerce,—but for the mere use of the person who killed the birds. The person killing quail under this statute has but a qualified property in the birds after they are killed. He may consume them. If a trespasser should take them from him, he might maintain an appropriate action to regain the possession. But the law which authorized him to kill the quail has withheld the right to sell, or the right to ship for the purpose of sale, and when such person undertakes to ship for sale he is undertaking to assert a right not conferred by law. The act, therefore, does not destroy a right of property, because no such right exists." *American Express Co.* v. *People*, 133 Ill. 649. " The question of individual enjoyment is one of public policy and not of private right." *Geer* v. *Connecticut*, 161 U. S. 519.

" The cases cited abundantly establish the doctrine that it is competent for the legislature, for the purpose of protecting game or fish, to absolutely prohibit the sale of fish or game caught within the limits of the state during a closed season, or during the entire year." *People* v. *O'Neil*, 110 Mich. 324. The statute in question is a valid exercise of the legislative power to enact equal laws for the protection of the public right of fishery. It imposes upon all persons alike " restrictions and limitations upon the time and manner of taking fish." *State* v. *Roberts*, 59 N. H. 256.

In accordance with the stipulation in the case, the order must be,

*Verdict directed for the state.*

All concurred.