# Hyde *v.* The State.

## *Violating Game Law.*

(Decided April 24, 1908. 46 South. 489.)

1. *Statutes; Construction; Game Law; Provisos.*—Section 45 1-2 of the General Acts 1907, p. 81, must be construed as a proviso to section 44 of the same act and persons not hunting the animals or game protected by the said act are not required, under it, to obtain written permission of the landowner.

2. *Criminal Law; Summary Prosecution; Complaint; Defensive Matter.*—An affidavit, the basis of a prosecution under the game law, for hunting upon the lands of another without permission, need not negative the fact that the game hunted was not that protected by the act, since the proviso not requiring permission to hunt game not protected by the game law is incorporated in a section separate from the section creating the offense, and is matter of de- fense.

3. *Game; Power of State to Protect.*—By virtue of the police power of the state it has authority to make regulation for the protection of game and fish by restricting their taking and molestation to cer- tain seasons of the year.

4. *Constitutional Law; Personal Rights; Use of Property.*—Section 44 of General Acts 1907, page 94, is not unconstitutional in restrict- ing the rights of a landowner in the use of his property by requir- ing a written, as distinguished from an oral, permission to go there- on for the purpose of hunting, since the restriction is not upon the land owner, but upon the person going thereon for such purposes.

APPEAL from Bibb County Court.

Heard before Hon. W. L. PRATT.

John Hyde was convicted of hunting on the lands of another without written permission, and appeals. Af- firmed.

W. H. WRIGHT, and HENRY FITTS, for appellant. The demurrers to the indictment should have been sustained. —*Davis v. The State,* 58 Ala. 58; *Smith v. The State,* 63 Ala. 55; *Grattan v. The State,* 71 Ala. 344; *Carson v. The State,* 67 Ala. 235; *Turnipseed v. The State,* 6 Ala. 664; *Williams v. The State,* 15 Ala. 259; *Beasley v. The State,*

[Hyde v. The State.]

18 Ala. 535; *State v. Pluckett,* 2 Stew. 11; *State v. Rayford,* 7 Port. 101; *Bush v. The State,* 18 Ala 415; *Johnson v. The State,* 32 Ala. 583. Section 44 transcends the police power of the state.—1 Tiedman's S. & F. Control of Persons & property, p. 13; *Toney v. The State,* 141 Ala. 120; *Montgomery v. Kelly,* 142 Ala. 552; *Greensboro v. Ehrenreich,* 80 Ala. 579.

ALEXANDER M. GARBER, Attorney-General, and THOMAS W. MARTIN, Assistant Attorney-General, for the State. The demurrers do not raise the points sought to be pressed.—*Milligan v. Pollard,* 112 Ala. 465; *Wright v. The State,* 136 Ala. 139; *McQueen v. The State,* 141 Ala. 100; *Hollin v. The State,* 139 Ala. 130. If the defendant was not hunting animals protected by the statute, he could have invoked this defense and have proven it. The burden was on him and not on the state. —*Freiberg v. The State,* 94 Ala. 91; *Atkins v. The State,* 60 Ala. 4; *Rogers v. Brooks,* 105 Ala. 549. The right of protecting animals or birds is within the control of the law giving power.—*Gear v. Connecticut,* 161 U. S. 519. —*Ex parte Maier,* 103 Cal. 476; *State v. Chappell,* 58 Am. St. Rep. 524; *Phelps v. Racy,* 19 Am. Rep. 140; *State v. Harrub,* 95 Ala. 176.

DENSON, J.—The Legislature, at the first session held in 1907, enacted a statute, entitled "An act relating to the preservation, propagation and protection of game animals, wild birds and fish; establishing the department of game and fish, creating the office of state game and fish commissioner, and providing for his election and compensation; creating the office of county game and fish wardens, and deputy game and fish warden, and providing for their appointment and compensation; creating a game and fish protection fund and appropriating mon-

ey therefrom." This act was approved February 19, 1907, and may be found in Gen. Acts 1907, at page 81. Section 44 of the act is in this language: "That it is hereby made unlawful for any person to hunt on the lands of another without first having obtained from the owner or agent thereof a written permission to do so, said written permission shall be good for one year from date of issuance unless otherwise provided therein, and said permission shall expire unless otherwise provided at the expiration of one year from the date of issuance. Any person violating the provisions of this section shall be deemed guilty of a misdemeanor and on convnction shall be fined not less than ten nor more than twenty-five dollars." Section 45½ of the act is in this language: "The provisions of this act shall not apply to persons hunting any of the birds or animals of this state which are not protected by the provisions of this act." It is clear that section 45½ must be construed as a proviso to section 44; so that a person not hunting game animals or birds as the same are defined by the act would not be required to obtain the written consent required by section 44.

The affidavit on which this prosecution was commenced in the justice court reads as follows: "The state of Alabama, Bibb County. Personally appeared before me, A. H. Gentry, a justice of the peace in and for said county, C. H. Cole, who, being duly sworn, says on oath that within 60 days before making this affidavit, in said county, John Hyde did hunt on the lands of another without written permission, against the peace and dignity of the state of Alabama." The jurat and signature are omitted here. It is first insisted, on demurrer, that the affidavit is defective, because it fails to allege that the hunting was of some of the birds or animals protected by the game law, and therefore that no violation of

law is charged. This position is not well taken. Notwithstanding section 45½ must be construed in connection with section 44, as proviso to that section, the proviso being embodied in a separate clause of the statute from that creating the offense, it is not necessary that the affidavit should aver that the hunting was of birds or animals protected by the statute; the settled rule being that, if the act charged as a violation of the statute comes within the influence of the proviso, this would constitute a defense more properly coming from the defendant.—*Grattan's Case* 71 Ala. 344, and authorities there cited; *Bellinger's Case,* 92 Ala. 86, 9 South. 399; *Sims's Case,* 135 Ala. 61, 33 South. 162; *Brazelton's Case,* 66 Ala. 96; 22 Cyc. p. 344; 10 Ency. Pl. & Pr. p. 495. This rule prevails in respect to indictments. A fortiori it is applicable to complaints made before justices of the peace in the form of affidavits, in which that particularity required to be observed in indictments is dispensed with.—*Brazelton's Case, ubi supra; Brown's Case,* 63 Ala. 97. .

It is next insisted that, in so far as section 44 is concerned, the act is unconstitutional as embracing a subject not within the police power of the state to deal with or legislate upon. Speaking generally with respect to the act, it may be said that the right of the state, in the exercise of the police power, to make regulations for the preservation of game and fish, restricting their taking and molestation to certain seasons of the year and under prescribed rules and regulations, is recognized and established, not only in the common law of England, but the decisions of the courts of last resort in many of the states, as well as by the Supreme Court of the United States.

In the case of *Geer v. State of Connecticut,* 161 U. S. 519, 16 Sup. Ct. 600, 40 L. Ed. 793, will be found an

[Hyde v. The State.]

exhaustive and interesting discussion of the question by
Justice White, who wrote the majority opinion for the
court.  In that opinion, after discussing the nature of
the property in game, and asserting that the ownership
of wild animals (so far as they are capable of owner-
ship) is in the state, not as proprietor, but in its sover-
eign capacity, as the representative, and for the benefit,
of its people, the learned writer announces the further
conclusion that the Legislature, in virtue of the police
power, has the absolute right to control and regulate the
killing of game, even to the extent of prohibiting the
shipment of game birds and animals out of the state af-
ter they have been reduced to possession. This latter con-
clusion has reference to the interstate commerce clause
of the federal Constitution, and it may be a matter of
importance to transcribe what was said in the very con-
clusion of the opinion on this subject: "Aside from the
authority of the state, derived from the common owner-
ship of game and the trust for the benefit of its people
which the state exercises in relation thereto, there is
another view of the power of the state in regard to the
property in game which is equally conclusive.  The right
to preserve game flows from the undoubted existence in
the state of a police power to that end, which may be
none the less efficiently called into play because by do-
ing so interstate commerce may be remotely and indi-
rectly affected.  *  *  *  Indeed, the source of the
police power as to game birds (like those covered by the
statute here called in question) flows from the duty of
the state to preserve for its people a valuable food sup-
ply.—*Phelps v. Recey*, 60 N. Y. 10, 19 Am. Rep. 140.
The exercise by the state of such power, therefore, comes
directly within the principle of *Plumley v. Massachu-
setts*, 155 U. S. 461, 473, 15 Sup. Ct. 154, 39 L. Ed. 223,
227.  The power of a state to protect by adequate police

regulation its people against the adulteration of·articles of food (which was in that case maintained), although in doing so commerce might be remotely affected, necessarily carries with it the existence of a like power to preserve a food supply which belongs in common to all the people of the state, which can only become the subject of ownership in a qualified way, and which can never be the object of commerce, except with the consent of the state and subject to the conditions which it may deem best to impose for the public good."—*State v. Chapel,* 64 Minn. 130, 66 N. W. 205, 32 L. R. A. 131, 58 Am. St. Rep. 524; 14 Am. & Eng. Ency. Law (2d Ed.) p. 661, and cases cited in notes to text. It suffices to say our views on the subject accord with those expressed in the very able opinion of Justice White.

Recurring to the position assumed and the point made by the defendant (appellant) in his brief, he does not, as we understand the point, contend for the general proposition that it is outside of the police power of the state to pass a law relating to the preservation and propagation of game animals, wild birds, and fish, but simply maintains that section 44 of the law here in judgment deals with a subject·outside of legislative competency in respect to the police power. The language of the brief in the statement of the proposition is as follows: "We further suggest that section 44 of the game law, in requiring of the landowner a written, as distinguished from an oral, permission, transcends the power of·the state." The argument in support of the contention proceeds on the theory, not that any right of the hunter is restricted, but that the right of the landowner in the use of his property is unduly restricted. Assuming, from this point of view, that the defendant is in position to bring in question the constitutionality of the act, which right in defendant may well be doubted (8 Cyc. pp. 787-

789; *Jones v. Black*, 48 Ala. 540; *Smith v. Inge*, 80 Ala. 283; *Shehane v. Bailey,* 110 Ala. 308, South. 359), we are of the opinion that his contention is untenable. It is clear to our minds that, instead of the law's being an invasion or an undue abridgment of any right of the landowner in the use of his property, it operates as a protection to it against trespassers. The only restriction, it seems to us, is one placed upon the defendant; and it is not, and in the very nature of things cannot be, contended that the restriction invades any constitutional right of his. It is not the right of any person to hunt on the lands of another without the consent of the owner; and one hunting without consent is a trespasser, subjecting himself to a civil action for the offense.—14 Am. & Eng. Ency. Law (2d. Ed.) 656.

On the foregoing considerations we hold that the point made by the defendant on the constitutionality of section 44 of the act is not well taken. No other question has been presented, and the judgment of conviction will be affirmed.

Affirmed.

TYSON, C. J., and SIMPSON and ANDERSON, JJ., concur.