# Barclay *v.* The State.

### *Violating Game Law.*

(Decided June 18, 1908.  47 South. 75.)

1. *Game; Hunting on Property of Another; Purpose of Law.*—The game law (General Laws 1907, p. 81) was intended primarily for the preservation and protection of the creatures enumerated in the act, and the protection of land against trespassers thereon was a mere incident thereto, and hence the act was not violative of any constitutional provision. The entry by one on the premises of another, unless he be a hunter, is not prohibited by the act.

2. *Same; Permission to Hunt; Authority of Tenant.*—General Acts 1907, page 81, does not authorize a mere tenant of the owner to give the written permission required to hunt upon the lands of the owner, since the term, owner, as employed in the act means he who has the title as distinguished from a possessory interest. Even the tenant himself cannot hunt upon the land of his landlord without written permission.

APPEAL from Montgomery City Court.

Heard before Hon. W. H. THOMAS.

Will Barclay was convicted of hunting on the land of another without the written permission of the owner, or his agent. He defended on the theory that he had the written permission of the tenant in possession of the land. Affirmed.

L. A. SANDERSON, for appellant. Counsel insists that a tenant in possession for years has the right to keep all persons off the land including the owner except for certain defined purposes and that as he has the right to do this he had the right to permit another to come upon it and that he alone could give such permission. In support thereof he cites the following: 4 Kent's Comm. p. 80, seq.; *Matthews v. The State,* 81 Ala. 66; *Sewell's Case,* 82 Ala. 57; *Watson v. The State,* 63 Ala. 23; *Banks v. The State,* 23 South. 530. He cites the follow-

[Barclay v. The State.]　·

ing as analogous.—100 Ala. 94; 50 Ala. 121; 55 Ala.
65; 97 Ala. 3; 115 Ala. 113; 62 Ala. 177; 52 Ala. 357;
86 Ala. 77; 31 Ala. 412.

ALEXANDER M. GARBER, Attorney-General, for the
State. The legislature evidently meant to use the word,
owner, in its primary sense. Under the law, General
Acts 1907, commonly called the Game Law, none but the
owner or his authorized agent can grant permission to
hunt upon the lands.—*Sterling v. Jackson,* 13 Am. St.
Rep.　·

McCLELLAN, J.—The defendant was convicted of a
violation of the act relating to the preservation, propa-
gation, and protection of game, etc. (Acts 1907, p. 81),
in that he hunted, without written permission of the
owner or his agent, on lands in Montgomery county.
This court, in the decision (rendered at this term) of
*Hyde v. State,* 155 Ala. 133, 46 South. 489, determined
adversely to this appellant all the questions sought to
be raised by the demurrer to the indictment. We ad-
here to that ruling as applicable to the case in hand.

The proof shows that the defendant had the written
permission of the tenant for the year 1907 of the prem-
ises in question, and that such tenant had the exclusive
charge possession, and control of the lands on which
the hunting was done by the defendant. Section 44
of the act contains this provision: "That it is hereby
made unlawful for any person to hunt on the lands of
another without first having obtained from the owner or
agent thereof a written permission to do so. * * *
Was the permission held by this defendant within the
provision quoted? The evident purpose of the act un-
der consideration is the preservation, propagation, and
protection of the creatures enumerated in the act. It

is not, except as a mere incident, directed to the protection of lands against trespassers. Unless one is a hunter his entry on the premises of another is not made by this act unlawful. In the light of these considerations it is not difficult to determine from whom only the justifying written permission must be had. The term "owner" must be given, as employed in this act, its primary meaning, which is he who has the title, as distinguished from a mere possessory right, to the premises. 6 Words & Phrases, p. 5134 et seq.; *L. & N. R. R. v. Murphree,* 129 Ala. 432, 29 South. 592.

This construction is rendered certain in correctness by two considerations, additional to the general purpose of the act to which we have referred. The quoted section confers the prerogative to give the written permission on the agent of the owner, thereby plainly evincing an intent to confine the right to confer the privilege of hunting on one acting for and in the stead of the owner, and thus excluding the tenant, whose possessory right is, of course, inconsistent with that of him who holds title. The second consideration is based upon this provision of section 44: "Said written permission shall be good for one year from the day of its issuance unless otherwise provided therein, and said permission shall expire, unless otherwise provided, at the expiration of one year from the date of its issuance." If the tenant, who is, of course, not an agent of the owner in any sense, could issue the permission, it would result that the right so conferred on the hunter might extend beyond, by many months, the termination of the tenant's term. Certainly such a result was not contemplated by this act. It is wholly inconceivable that the lawmakers, phrasing this enactment as they did, purposed to clothe the tenant, whatever may be his term, with the power to confer the hunter's privilege beyond the tenant's ten-

ure.   Of course, the result of this construction is to place even the' tenant, with respect to hunting, under this act, in the same category as a stranger.   Hunting the creatures mentioned in the act is not within the rights in the premises enjoyable by the tenant, except upon compliance with the requirments of this act.

We are, of course, without power or right to mollify the rigor, if so, of this phase of the act in hand in the interest of tenants.   The Legislature have so spoken, and to their clearly expressed intent must our interpretation conform.   The judgment is affirmed.

Affirmed.

TYSON, C. J., and DOWDELL, SIMPSON, ANDERSON, and DENSON, JJ., concur.