The American Express Company

*v.*

The People of the State of Illinois.

*Filed at Mt. Vernon June 13, 1890.*

1.  Game law—*preservation of game—constitutionality of the act.* The preservation of birds and other game is authorized as a police regulation, and the constitutionality of laws enacted for such object can not be questioned.  Any legislation tending to the preservation of game is constitutional.

2.  Same—*hunting and killing quail—at what time allowable—and for what use.* The first section of the act to protect game makes it unlawful to hunt or kill quail between the first day of December and the first day of October of each year, but is silent as to October and November. It therefore follows, that a person may hunt or kill quail for his own use and consumption during the last named months,—not, however, for sale, but under the restrictions found in section 2 of the act.

3.  The person who kills quail at a time this is allowed, has not an absolute property in the dead birds.  The ownership of animals and fowls denominated game is in the people of the State, and the person killing the same takes such title or right therein as the legislature may give him, and no more.  The law only gives the right to kill for his own use, but no right to sell them or to ship them for sale.

4.  Same—*transportation of game—liability of carrier.* Section 2 of the act relating to game, does not prohibit, absolutely, the transportation of quail which have been killed in the State, but only transportation by persons, corporations and carriers knowing the same to have been sold, or knowing that they are to be sold or offered for sale. But any carrier of goods for hire, as, an express company, which transports quail in violation of such prohibition and with such knowledge, will be held amenable to the penalties prescribed in that section.

Appeal from the County Court of Effingham county; the Hon. Sylvester F. Gilmore, Judge, presiding.

Messrs. Wood Bros., and Messrs. Rinehart & Wright, for the appellant:

The right of the citizen to kill quail in the month of October not being prohibited by the statute, must be the same as at common law.  What was that right?

The individual had no property right until the game was under his control. See Cooley on Torts, 435; 2 Kent's Com. (12th ed.) 350.

When under his control, the birds, if living, were his qualified property. If they escaped, or were abandoned, his property in them ceased. (2 Kent's Com. 349.) If they were dead, his property in them was absolute. 2 Blackstone's Com. (Sharswood's ed.) 403. They were his own. Every right attached to them that belonged to any other species of personal property. To steal or otherwise invade this species of property was either a criminal offense or a civil injury, as the case might be. (Ibid.) To steal such game or birds as were fit for food, was as much a felony, by the common law, as to steal the carcass of a tame or domestic animal that had been slaughtered for food. Ibid. 393.

When game had been taken and killed by the individual, the ownership which the king (or State) had in it while wild and living, ceased in favor of him who had killed and possessed it. 2 Blackstone's Com. (Sharswood's ed.) 419, and Christian's note thereto.

The property right in game reduced to possession by the citizen, and killed for food, carried with it the necessary incident of alienation. (2 Kent's Com. 327.) It was property in inanimate things personal. It was property in possession absolute, as, "where a man hath solely and exclusively the right and also the occupation of any movable chattels, so that they can not be transferred from him or cease to be his without his own act or default." 2 Blackstone's Com. (Sharswood's ed.) 388. It was the duty of common carriers to transport this species of property, (2 Addison on Contracts, sec. 978,) and a refusal to do so, without some just ground, would render them liable. 2 Kent's Com. 599.

The right of property of these citizens in these dead birds was above and before constitutions. (Cooley's Const. Lim. 37, 175.) For the legislature to prevent its transportation

through the State would be a restriction upon inter-State commerce, the power to regulate which has been committed by the Federal constitution to Congress, and that power exercised. (*Railroad Co.* v. *Husen,* 95 U. S. 465.) To prevent its sale or transportation for sale within the State would be an interference with private right, amounting to a destruction of the right of property without due process of law. *Magner* v. *People,* 97 Ill. 336; *State* v. *Saunders,* 19 Kan. 127.

Mr. R. C. HARRAH, for the People:

The policy of the common law was to regulate and control the hunting and killing of game, for its better preservation, and such regulation and control belong to the police power of the government. Cooley's Blackstone, book 4, p. 174.

Almost every State in the Union has exercised the power to pass laws for the preservation of game, the regulations prescribed by statute qualifying and restricting the right of the individual to hunt and kill game becoming more stringent as the country becomes more populous and its total extinction more imminent. Tiedeman on Lim. of Police Power, 440, sec. 122.

As to the constitutionality of game laws, see *Phelps* v. *Racy,* 60 N. Y. 10; *Allen* v. *Wyckoff,* 48 N. J. 93; *Magner* v. *People,* 97 Ill. 333; *Parker* v. *People,* 111 id. 588.

The prohibition of the sale of quail will manifestly prevent their destruction.

Section 2 is not subject to the objection that it destroys the right of property without due process of law. It does not prohibit absolutely the transportation of wild birds which have been killed within the limits of the State, but only prohibits their transportation by persons, corporations and carriers when they have knowledge the birds were killed in this State and sold, or were being transported to a place to be sold or offered for sale, making them amenable to the penalty only on proof of knowledge.

The constitutionality of that part of the statute which forbids their transportation to "any place outside of the State, for any purpose," is not involved in this case, as the proof shows that all the game, in this case, was killed in this State, and transported to Chicago, in this State.

No commerce between the States is interfered with by the law governing this case. It only deals with the game killed in the State, which can not be lawfully sold or lawfully transported for sale, and, "very clearly, this law relates only to the internal commerce of the State in the article of game." *Magner* v. *People*, 97 Ill. 336.

Police power not delegated to the general government resides in the States, as an inherent attribute of sovereignty. *United States* v. *DeWitt*, 9 Wall. 41; *Slaughter House cases*, 16 id. 000; *Sherlock* v. *Alling*, 93 U. S. 99; *Patterson* v. *Kentucky*, 97 id. 501; *Smith* v. *Alabama*, 124 id. 128.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action to recover the penalties prescribed for the unlawful transportation of quail, in section 2 of "An act to amend sections 1, 2 and 6 of an act to revise and consolidate the several acts relating to the protection of game, and for the protection of deer, wild fowl and birds." Laws of 1889, p. 161.

The facts agreed upon by the parties, on the trial of the cause, were in substance as follows: That the defendant, the American Express Company, is a corporation, and carrier of goods for hire; that between October 1 and October 23, 1889, it received for transportation, from Redding, Gibbs, and others, at Mason, in Effingham county, divers quail, which had been killed, by shooting, after October 1, 1889, in this State, and on October 23, 1889, the express company did transport such quail to Chicago, and deliver them to Hernse & Lynch Bros., commission merchants; that the express company, at the time

of such receipt for transportation, by its agent (Sisson) at Mason, had knowledge that the quail had been sold, and were to be sold or offered for sale by said commission merchants.

Section 1 of the act provides, "that it shall be unlawful for any person to hunt, kill, trap, net or ensnare, or otherwise destroy, * * * any ruffled grouse, quail, pheasant or partridge between the first day of December and the first day of October of each succeeding year or any year." Section 2 provides: "It shall be unlawful for any person to buy, sell or have in possession any of the animals, wild fowl or birds mentioned in section 1 of this act, at any time when the trapping, netting or ensnaring of such animals, wild fowl or birds shall be unlawful, which shall have been entrapped, netted or ensnared contrary to the provisions of this act; and it shall further be unlawful for any person or persons, at any time, to sell or expose for sale, or to have in his or their possession for the purpose of selling, any quail, pinnated grouse or prairie chicken, ruffled grouse or pheasant, gray, red fox or black squirrel or wild turkey that shall have been caught, snared, trapped or killed within the limits of this State; and it shall further be unlawful for any person, corporation or carrier to receive for transportation, to transport, carry or convey, any of the aforesaid quail, pinnated grouse or prairie chicken, ruffled grouse or pheasant, squirrel or wild turkey, that shall have been caught, snared, trapped or killed within the limits of this State, knowing the same to have been sold, or to transport, carry or convey the same to any place where it is to be sold or offered for sale, or to any place outside of this State, for any purpose."

It is plain, under the facts as agreed upon, the express company received the quail for transportation, and transported the same, knowing the quail were sold or transported for the purpose of sale, in violation of the terms of the statute, and if the statute is valid the company was liable for the amount of the penalty provided by its terms and provisions. But it

is insisted by the express company that the statute is invalid, and upon this ground the judgment rendered in the county court was erroneous.

It will be observed that the first section of the act makes it unlawful to hunt or kill quail between the first day of December and the first day of October of each year; but the section is silent as to October and November. It would follow, therefore, that a person might hunt or kill quail during the months of October and November,—not, however, for sale, but under the restrictions found in section 2 of the act. The first clause of section 2 makes it unlawful for any person to buy, sell or have in possession any of the birds named in section 1 of the act, at any time when the trapping, etc., of such animals shall be unlawful. The second clause makes it unlawful for any person to sell or expose for sale, or have in possession for the purpose of sale, any quail that shall have been killed within the limits of this State. Under this clause, while a person might lawfully kill quail during the months of October and November for his own use, he would have no right whatever to do so for the purpose of placing such quail on the market as an article of commerce. Then follows the clause making it unlawful for any person, corporation or carrier to transport quail, when the same have been killed in this State, for sale, regardless of the time such quail may have been killed.

A bare reference to the terms of sections 1 and 2 of the act is sufficient to show that the purpose the legislature had in view in passing the act was to protect the game in the State. The hunting and killing of game was regulated, for its preservation, by the common law, and the control was predicated under the police power of the government. (4 Blackstone, 174.) Statutes in almost every State in the Union may be found enacted for the preservation of game. The text writers, in treating of the power to legislate on this subject, place it under the police power inherent in each State. Tiedeman, in his Limitations of Police Power, (sec. 122, chap. 10, p. 440,) says:

"It is a very common police regulation, to be found in every State, to prohibit the hunting and killing of birds and other wild animals in certain seasons of the year, the object of the regulation being the preservation of these animals from complete extermination, by providing them a period of rest and safety, in which they may procreate and rear their young. The animals are those which are adapted to consumption as food, and their preservation is a matter of public interest. The constitutionality of such legislation can not be questioned."

In *Phelps* v. *Racy*, 60 N. Y. 10, the power of the State to legislate for the preservation of game was called in question, and in deciding the case the court said: "The protection and preservation of game has been secured by law in all civilized countries, and may be justified on many grounds, one of which is for the purposes of food. The means best adapted to this end are for the legislature to determine, and courts can not review its discretion. If the regulations operate, in any respect, unjustly or oppressively, the proper remedy must be applied by that body." See, also, *Allen* v. *Wyckoff*, 48 N. J. 93.

In *Magner* v. *The People*, 97 Ill. 333, the validity of the Game law of 1879, to which the act in dispute is amendatory, was before this court, and it was there said: "The ownership being in the people of the State,—the repository of the sovereign authority,—and no individual having any property rights to be affected, it necessarily results that the legislature, as the representatives of the people of the State, may withhold or grant to individuals the right to hunt and kill game, or qualify and restrict it, as in the opinion of its members will best subserve the public welfare."

It is, however, argued, that where quail have been killed, the dead animals become property, and the taker becomes the absolute owner of such property, and an act to prevent a sale or transportation for sale within the State would be an interference with private right, amounting to a destruction of the right of property without due process of law. The fallacy of

the position consists in the supposition that the person who may kill quail has an absolute property in the dead animals. In the *Magner case, supra,* it was held, as has been seen, that no one has a property in animals and fowls denominated game,—the ownership was in the people of the State. This being so, it necessarily followed that the legislature had the right to permit persons to kill or take game upon such terms and conditions as its wisdom might dictate, and that the person killing game might have such property interest in it, and such only, as the legislature might confer. The legislature has never conferred an absolute property in quail upon the person who might kill the same. The killing of quail during the months of October and November was permitted, not for sale—not to go upon the market as an article of commerce—but for the mere use of the person who killed the birds. The person killing quail under this statute has but a qualified property in the birds after they are killed. He may consume them. If a trespasser should take them from him, he might maintain an appropriate action to regain the possession. But the law which authorized him to kill the quail has withheld the right to sell or the right to ship for the purpose of sale, and when such person undertakes to ship for sale, he is undertaking to assert a right not conferred by law. The act, therefore, does not destroy a right of property, because no such right exists.

It will be observed that section 2 of the act does not prohibit, absolutely, the transportation of quail which have been killed in the State, but only transportation by persons, corporations and carriers knowing the same to have been sold, or knowing they were to be sold or offered for sale. If the legislature of the State thought that a statute preventing a citizen from killing quail for sale in the market, and imposing a penalty on a common carrier for shipping or transporting for sale, would result in protecting the game in the State, we perceive no valid reason why a statute of that character might not be enacted. The nature and character of the legislation was a

matter resting solely with the legislature, and so long as no constitutional right of the citizen has been infringed upon, the statute must be sustained.

The judgment of the county court will be affirmed.

*Judgment affirmed.*