[Crim. No. 868.   In Bank.—June 11, 1902.]

## Ex parte S. KENNEKE, on Habeas Corpus.

CRIMINAL LAW—SELLING QUAIL—CONSTITUTIONALITY OF PENAL CODE—HABEAS CORPUS.—Section 626K of the Penal Code, which makes it a misdemeanor to buy or sell any quail, is constitutional and valid, and not violative of the fourteenth amendment of the Federal constitution, nor of section 11 of article I of the constitution of this state, requiring all laws of a general nature to have a uniform operation; and a person charged with selling quail in violation of that provision of the Penal Code, and arrested therefor, will not be discharged upon *habeas corpus.* [Van Dyke, J., and Temple, J., dissenting.]

Id.—Property in Wild Game.—Wild game belongs to the whole people, and the legislature may dispose of it as may seem to it best,—subject only to constitutional limitations against discriminations,—and the state law in question does not destroy any right of property, nor make any arbitrary discrimination, or any discrimination in violation of the fourteenth amendment or of any provision of the state constitution.

APPLICATION for writ of *habeas corpus* to the Chief of Police of the City and County of San Francisco holding petitioner under warrant of arrest from the Police Court. George H. Cabaniss, Judge.

The facts are stated in the opinion of the court.

Riordan & Lande, for Petitioner.

William Hoff Cook, for Respondent.

McFARLAND, J.—Petitioner was arrested and is held under a charge of violating section 626k of the Penal Code, which is, omitting parts of the section not material here, as follows: "Every person who buys, sells, offers or exposes for sale, barter, or trade, any quail . . . is guilty of a misdemeanor." The sole ground upon which petitioner seeks to be discharged is the alleged unconstitutionality of the said section. It is contended that the section is violative of the fourteenth amendment of the Federal constitution, and of section 11 of article I of the constitution of this state, in that it is not uniform in its operation, that it illegally discriminates between different classes of persons, that it deprives persons of the equal protection of the laws, and interferes with the inalienable right of acquiring, holding, and protecting property. The contention is not maintainable.

Wild game belongs to the whole people, and the legislature may dispose of it as may seem to it best,—subject only to constitutional limitations against discriminations. Within those limitations the legislature, for the purpose of protecting game, may pass such laws as to it seem most wise; and "the measures best adapted to that end are for the legislature to determine, and courts cannot review its discretion." (*Ex parte Maier*, 103 Cal. 476,[1] and cases there cited.) There

---

[1] 42 Am. St. Rep. 129, and note.

is no question in the case at bar as to the reasonableness of an ordinance as in *Ex parte Knapp,* 127 Cal. 101, and other cases cited; the provision attacked here is a law of the state passed by the legislature.

The law in question does not destroy a right of property. This point was correctly disposed of by the supreme court of Illinois in *American Express Co.* v. *State,* 133 Ill. 649.[1] In that case the court, dealing with a statute similar to the one here involved, and with this question of the right of property, say: ''The fallacy of the position consists in the supposition that the person who may kill quail has an absolute property in the dead animals. In the Magner case, *supra,* it was held, as has been seen, that no one has a property in animals and fowls denominated game,—the ownership was in the people of the state. This being so, it necessarily followed that the legislature had the right to permit persons to kill or take game upon such terms and conditions as its wisdom might dictate, and that the person killing game might have such property interest in it, and such only, as the legislature might confer. The legislature has never conferred an absolute property in quail upon the person who might kill the same. The killing of quail during the months of October and November was permitted, not for sale,—not to go upon the market as an article of commerce,—but for the mere use of the person who killed the birds. The person killing quail under this statute has but a qualified property in the birds after they are killed. He may consume them. If a trespasser should take them from him, he might maintain an appropriate action to regain the possession. But the law which authorized him to kill the quail has withheld the right to sell or the right to ship for the purpose of sale, and when such person undertakes to ship for sale he is undertaking to assert a right not conferred by law. The act, therefore, does not destroy a right of property, because no such right exists.''

There is no arbitrary discrimination in the law which would make it obnoxious to the fourteenth amendment, or to any provision of our state constitution; there is no discrimination in it whatever. Under the law all persons have the same right to kill quail within certain limitations; and it provides

[1] 23 Am. St. Rep. 641.

that "*every person* who buys, sells," etc., any quail shall be guilty, and does not give to *any person* the right to so buy or sell. (See, also, *Geer* v. *Connecticut*, 161 U. S. 519.)

The petitioner is remanded and the writ discharged.

Garoutte, J., Henshaw, J., Harrison, J., and Beatty, C. J., concurred.

VAN DYKE, J., dissenting.—I dissent. The petitioner is charged with selling one quail during the open season, in violation of the section of the Penal Code as amended by the legislature at the session of 1901. The amendment in question, in my opinion, is unconstitutional. Our state constitution declares: "All laws of a general nature shall have a uniform operation." (Art. I, sec. 7.) And by the fourteenth amendment to the constitution of the United States, among other things, it is declared that no state shall deprive any person of life, liberty, or property without due process of law. In the Slaughterhouse cases (16 Wall. 127) it is said: "Liberty is freedom from all restraints but such as are justly imposed by law. Beyond this line lies the domain of usurpation and tyranny. Property is everything that has an exchangeable value, and the right of property includes the power to dispose of it according to the will of the owner." The amendment to the Penal Code under consideration has made a sharply defined discrimination against selling quail and other game birds or animals, and not against the killing of them, and the purpose thereby to preserve them for the special benefit of those who may belong to gun-clubs, or who possess the leisure and qualifications of sportsmen, is as plain as though so written in direct terms; and this class is very insignificant in number, compared with the whole people of the state. The women and children of the state, and the men who have not sufficient time to hunt game, and the old and infirm, and such as are not endowed with good sight, are all deprived of any use or benefit in the wild game, unless some sportsman friend may see proper to give it to them.

He has read history to very little purpose who does not know that game laws such as this, enacted and enforced in the interests of a privileged few, have been the fruitful source of the oppression of the masses of the people, and have caused

more popular discontent and resentment than almost any other subject. It were better to exterminate the game at once than to preserve it for the special benefit only of a favored few.

The wild game of the state, it is true, belongs to the people in their sovereign capacity, and it is not the subject of private dominion to any greater extent than the legislature may see fit to make it; but, as said in *Kellogg* v. *King*, 114 Cal. 378 :[1] "The legislature has seen fit to prescribe the limit where public proprietorship ends and that of the individual commences; and, when within the provisions of such statute, an individual is as much to be protected in the enjoyment of his rights in this species of property as in any other under the law,"—citing section 656 of the Civil Code, which reads: "Animals wild by nature are the subject of ownership, while living, only when on the land of the person claiming them, or when tamed, or taken and held in the possession, or disabled and immediately pursued." Game birds are included in the section of the Civil Code in reference to animals wild by nature. In the opinion quoted, the term "animals wild by nature," as used in the Civil Code, was construed to include game birds.

Laws for the protection and preservation of wild game are in their nature police regulations, and, as said in *Forster* v. *Scott*, 136 N. Y. 577: "This power can be used only to promote the public good, and is always subject to judicial scrutiny." And in *Colon* v. *Lisk*, 153 N. Y. 197,[2] it is said: "That power must be exercised subject to the provisions of both the Federal and state constitutions. Laws passed in the exercise of it must tend toward the preservation of the lives, health, morals, or welfare of the community, and the court must be enabled to see some clear and real connection between the assumed purpose of the law and the actual provisions thereof, and that the latter tend in some plain and appreciable manner toward the accomplishment of the objects for which the legislature may use this power." Judge Ross, in the case of *In re Marshall*, 102 Fed. Rep. 323, says: "Laws enacted in the exercise of the police power by a municipal corporation acting in pursuance of the laws of the state, or by a state itself, must be reasonable, and are always subject to the provisions of both the Federal and state constitutions,

[1] 55 Am. St. Rep. 74.          [2] 60 Am. St. Rep. 609.

and they are always subject to judicial scrutiny," and as further said in the same case: "Property is everything that has an exchangeable value, and the right of property includes the power to dispose of it according to the will of the owner." Mr. Justice Field, in his dissenting opinion in *Geer* v. *Connecticut*, 161 U. S. 541, says: "When *property*, like the game birds in this case, is reduced to possession, it becomes an article of commerce, and may be the subject of *sale*." Mr. Justice Harlan, in the same case, also dissenting, says: "The state, as we have seen, does not prohibit the killing of game, but permits hunting and killing of . . . quail . . . between the first day of October and the first day of January. The game in question, having been lawfully killed, the person who killed it and took it into his possession became the rightful owner thereof. This I take it will not be questioned. As such owner, he could dispose of it, by gift or sale, at his discretion." Although these are dissenting opinions, it would not be the first time in the history of jurisprudence if they contained the better law.

In *Ex parte Knapp*, 127 Cal. 101, it is held: "An ordinance intended to discriminate in favor of sportsmen and against all other persons in respect to the disposition of game lawfully killed is not a proper exercise of police power," and to show that this rule is made applicable also to state legislation as well as ordinances of a city or county, the opinion proceeds: "The statutes of the state in regard to game prohibit the offering for sale of game during the time it is unlawful to kill such game. (Stats. 1897, p. 90.) State legislation upon this subject seems complete, and restricts the rights of citizens so far as was necessary to prevent the unlawful killing of game. It was stated on argument, substantially, that the ordinance was aimed at 'pot-hunters.' I understand this phrase covers all except sportsmen. Relatively, a small part of the community only are sportsmen. A law or ordinance which would discriminate in their favor would not be a proper exercise of the so-called police power.'"

For the foregoing reasons I think the prisoner should be discharged.

Temple, J., concurred in the dissenting opinion.