[Crim. No. 2108. In Bank.—January 17, 1918.]

In re FRANK PHOEDOVIUS, on Habeas Corpus.

CRIMINAL LAW — GAME AND GAME LAWS — PROHIBITING SHIPPING BY PARCEL POST—CONSTITUTIONALITY OF LAW—UNIFORMITY IN OPERATION.—Section 627b of the Penal Code making it a misdemeanor to ship wild birds or wild animals or fish by parcel post does not violate section 11 of article I of the state constitution which requires uniformity in operation of all laws of a general nature, the very fact that Congress has exclusive jurisdiction of the postal service, furnishing the basis for discriminating against the use of that service in the shipment of wild game, it being obvious that valid provisions of state laws for the inspection and seizure of wild game illegally taken, could not be enforced as to game delivered to the postal service for transportation.

Id.—Law not Invalid as an Improper Interference with Property Rights.—Such enactment is not invalid as an improper interference with property rights by depriving one affected by it of the right to use the United States mails for the shipment of game, since wild game is not the subject of private ownership unless the people of the state elect to make it so, and therefore one who acquires and holds wild game, acquires and holds it subject, under this law, to the condition that he will not ship it by parcel post, and no property right in such game is violated by a law which makes it a crime for him to do so.

Id.—Interstate Commerce—Postal Service.—Such law is not an unauthorized regulation of interstate commerce, game not being the object of commerce except with the consent of the state, nor is it an interference with the postal service of the United States.

APPLICATION for a Writ of Habeas Corpus directed to the sheriff of San Mateo County.

The facts are stated in the opinion of the court.

Nathan Moran, for Petitioner.

Carl Westerfeld, for Respondent.

W. H. Lamar, of Washington, D. C., *Amicus Curiae.*

ANGELLOTTI, C. J.—The petitioner was convicted of a violation of the provision of section 627b of the Penal Code, which declares that "any person who ships any of the wild birds or wild animals or fish by parcel post is guilty of a misdemeanor," and adjudged to pay a fine of $25, and in default of such payment to be imprisoned. Held in the custody of the sheriff of San Mateo County by virtue of this judgment, he seeks his discharge on *habeas corpus,* claiming that this provision of law is invalid.

Said section 627b, as amended July 27, 1917 (Stats. 1917, p. 651), contains various provisions as to the conduct of common carriers and individuals in the matter of the shipment and the receiving for shipment of wild birds, wild animals, and fish, and the transportation thereof, violation of any of which provisions is declared to be a misdemeanor. These provisions, which prohibit the receipt by a common carrier from, or the transportation for any one person of more than the legal limit of game allowed to be taken or killed by one person, or the shipping or offer for shipment by an individual of

any such excess, and which also require every common carrier to keep all shipments of game in open view, labeled with the name and residence of the shipper and of the consignee, and the exact contents of the package, were designed, of course, to prevent shipment of wild game illegally taken and to enable the authorities to more easily discover violations of the game laws, all with a view to the proper preservation of the wild game of the state for the people of the state. The section, as so amended, contains the provision involved in this proceeding, one entirely new in this state, but obviously having the same purpose as the other provisions. It is urged on his behalf in this proceeding that the provision of the statute is void as being both an unlawful interference with a federal instrumentality, viz., the postal service of the United States, and an attempt to regulate interstate commerce. Petitioner also claims that it constitutes an unlawful interference with the property right of citizens to use the United States mail, and that it is in violation of section 11 of article I of our own constitution, which requires that all laws of a general nature shall have a uniform operation.

Of course, no one disputes the proposition that the postal service is a federal instrumentality under the exclusive jurisdiction of Congress, and that a state may in no way regulate or burden the operation thereof. It is this very fact which furnishes the basis for the discrimination against the use of that service by our citizens in the shipment of "wild game" (included in which is fish, *People* v. *Truckee Lumber Co.*, 116 Cal. 397, [58 Am. St. Rep. 183, 39 L. R. A. 581, 48 Pac. 374]), and in favor of other methods of shipment. When game is deposited in the parcel post it is at once subject to the exclusive control of the postal authorities under the statutes of the United States and regulations of the postoffice department, and absolutely free from state inspection and control. For reasons which are obvious the federal government could not tolerate the slightest interference with its officers and employees in the handling and delivery of the mail. For the purpose of protecting the game of the state for the use of the people of the state, the legislature has enacted many laws relative to the taking of game, some prohibiting the taking of certain kinds at any time, others prohibiting the taking of certain kinds except during a certain time known as the "open season" for such game, others limiting the num-

ber of certain kinds that may be taken by one person during a stated time, and so on. As a method of guarding against illegal taking of game it has been provided that the fish and game commissioners of the state shall see that the game laws are strictly enforced, and "shall inspect all buildings, other than dwellings, and all receptacles, other than the clothing actually worn by a person at the time of inspection, where game or fish may be stored or placed, and all boxes and packages containing fish or game that are held for transportation by any transportation company or common carrier; . . . to inspect regularly . . . all boxes and packages, containing fish or game that are held for transportation by any transportation company or common carrier." Also to "seize and take possession of all game or fish," which has been illegally taken, killed, or had in possession, or has been shipped or offered for shipment contrary to any of the laws of the state. It is necessarily conceded that these provisions as to inspection and seizure by the state officers of game shipped or offered for shipment cannot be enforced as to shipments by mail. Any attempt to so enforce them would indeed be an attempted unlawful invasion of the exclusive federal jurisdiction. If these provisions for inspection and seizure of game found to be illegally taken are valid enactments of state law, the fact that they cannot be enforced as to game delivered to the postal service for transportation furnishes a sufficient basis for excluding the parcel post from the means by which game may be shipped, in so far as any objection of special legislation or want of uniformity in operation under our state constitution is concerned.

The argument of learned counsel for petitioner in support of the proposition that the provisions as to inspection, etc., are invalid as improperly interfering with property rights, and that the provision here involved which precludes petitioner from using the United States mail for the shipment of game is in effect a deprival of his property right to use the United States mail without due process of law, to our minds fails to give due effect to the well-settled doctrine as to the nature and extent of one's property right in wild game. That doctrine was stated by this court through Mr. Justice Van Fleet in *Ex parte Maier*, 103 Cal. 476, 483, [42 Am. St. Rep. 129, 37 Pac. 402], in language subsequently approvingly quoted by the supreme court of the United States in *Geer* v.

*Connecticut*, 161 U. S. 519, 529, [40 L. Ed. 793, 16 Sup. Ct. Rep. 600], as follows: "The wild game within a state belongs to the people in their collective, sovereign capacity; it is not the subject of private ownership, except in so far as the people may elect to make it so; and they may, if they see fit, absolutely prohibit the taking of it, or any traffic or commerce in it, if deemed necessary for its protection or preservation, or the public good." The offense there charged was that of selling deer meat in violation of a state statute which prohibited any such sale in California. The meat sold was cut by the defendant from the carcass of an entire deer theretofore brought by him from the state of Texas, in which state it had been lawfully killed. It was contended that the statute did not and could not prohibit the sale of meat lawfully taken in another state. It was held that the statute both did and lawfully could prohibit such a sale, and that while the law was of course intended only for the protection of the game of *this* state, the intention was to accomplish that very end by prohibiting the sale wherever game was in fact obtained, and that such a law was reasonably adapted to that end. All state laws reasonably looking to this end have consistently been maintained by the courts, the theory being that the ownership of the sovereign authority being in trust for all the people of the state, it is the duty of the legislature to enact such laws as will best preserve the subject of the trust and leave the beneficial use in future to the people of the state. In *Geer* v. *Connecticut*, 161 U. S. 519, [40 L. Ed. 793, 16 Sup. Ct. Rep. 600], the supreme court of the United States upheld a statute of Connecticut which forbade the transportation without the state of game lawfully killed or taken within the state, or the having of such game in one's possession with the intent to procure its transportation beyond the state. In *Ex parte Kenneke*, 136 Cal. 527, [89 Am. St. Rep. 177, 69 Pac. 261], a statute prohibiting the buying or selling of quail was upheld by this court. The court, through Mr. Justice McFarland, said: "Wild game belongs to the whole people, and the legislature may dispose of it as may seem to it best, subject only to constitutional limitations against discrimination. Within those limitations the legislature, for the purpose of protecting game, may pass such laws as to it seem most wise; and the measures best adapted to that end are for the legislature to determine, and courts cannot review its dis-

cretion.'' It was held that the law did not destroy a right
of property, the court approvingly quoting from *American
Express Co.* v. *State,* 133 Ill. 649, [23 Am. St. Rep. 641, 9
L. R. A. 138, 24 N. E. 758], as follows: ''The fallacy of the
position consists in the supposition that the person who may
kill quail has an absolute property in the dead animals. . . .
The legislature has the right to permit persons to kill or take
game upon such terms and conditions as its wisdom might
dictate, and that the person killing game might have such
property interest in it, and such only, as the legislature might
confer. . . . The person killing quail under this statute has
but a qualified property in the birds after they are killed. . . .
But the law which authorized him to kill the quail has with-
held the right to sell or the right to ship for the purpose of
sale, and when such person undertakes to ship for sale he is
undertaking to assert a right not conferred by law. The act,
therefore, does not destroy a right of property, because no
such right exists.'' In *State* v. *Rodman,* 58 Minn. 393, [59
N. W. 1098], it was said that the legislature may adopt rea-
sonable regulations not only as to the time and manner in
which game may be taken and killed, ''but also imposing limi-
tations upon the right of property in such game after it has
been reduced to possession.'' It was further said that such
legislation deprives no person of his property, because the per-
son reduces game to possession ''subject to such conditions
and limitations as the legislature has seen fit to provide.''
(See, also, *Silz* v. *Hesterberg,* 211 U. S. 31, [53 L. Ed. 75,
29 Sup. Ct. Rep. 10].) Such has been the uniform course of
decision. We are, of course, speaking of regulations which
may reasonably be held by the legislature to look to the preser-
vation of the game of the state for the beneficial use of the
people of the state. The person taking or killing game, takes
or kills subject to the limitations of any such reasonable
regulation by the state, and his right of property therein is
qualified thereby. We can see no good ground for a claim
that regulations subjecting such game to inspection by state
officers when offered for shipment, or when in course of trans-
portation under shipment for the purpose of enabling illegal
takings to be detected, or to seizure by such officers when
found by them to be illegally taken, are in any way an un-
reasonable exercise of the power of the legislature in this be-
half. Whatever rights the shipper has in game shipped by

him are subject to these regulations, as are necessarily the rights of the transportation company and the consignee. And the same thing is necessarily true of the law here involved prohibiting the shipping of game by parcel post. It is a reasonable complement of the regulations as to inspection, without which the inspection in course of transportation could be had only as to such game as is shipped by some other means than the United States mail. The person having game in his possession which he desires to ship, acquires and holds it subject to the condition that he will not ship it by parcel post, and no property right in such game is violated by a law which makes it a crime for him to do so. We are entirely at a loss to see how a person's property right to use the United States mail for all lawful purposes is violated by a law which prohibits his use thereof for the purpose of transmitting property which he has acquired and holds subject to the condition that he shall not so transmit it.

The case of *Ex parte Knapp,* 127 Cal. 101, [59 Pac. 315], (involving the question of the validity of a *county ordinance*) relied on by learned counsel for petitioner in this connection is sufficiently distinguished as to such a case as this by what was said by the court in *Ex parte Kenneke,* 136 Cal. 527, [89 Am. St. Rep. 177, 69 Pac. 261], as follows: "There is no question in the case at bar as to the reasonableness of an ordinance as in *Ex parte Knapp,* 127 Cal. 101, [59 Pac. 315], and other cases cited; the provision attacked here is a law of the state passed by the legislature."

The claim that the state law here involved is an unauthorized regulation of interstate commerce is, we think, fully answered by decisions of the United States supreme court, the final arbiter on this question. A similar claim was made in *Geer* v. *Connecticut,* 161 U. S. 519, [40 L. Ed. 793, 16 Sup. Ct. Rep. 600], and held to be without foundation. The court, through its present chief justice, after exhaustively discussing the question of property in wild game, said: "The right to preserve game flows from the undoubted existence in the state of a police power to that end which may be none the less efficiently called into play, because by doing so interstate commerce may be remotely and indirectly affected. . . . The exercise by the state of such power therefore comes directly within the principle of *Plumley* v. *Massachusetts,* 155 U. S. 461, 473, [39 L. Ed. 223, 15 Sup. Ct. Rep. 154]. The power

of the state to protect by adequate police regulations its people against the adulteration of articles of food (which was in that case maintained), although in doing so commerce might be remotely affected, necessarily carries with it the existence of a like power to preserve a food supply which belongs to all the people of the state, which can only become the subject of ownership in a qualified way, *and which can never be the subject of commerce except with the consent of the state and subject to conditions which it may deem best to impose for the public good.*" (The italics are ours.) In another portion of the opinion the court speaks of the "consequent power of the state to follow such property into whatever hands it might pass with the conditions and restrictions deemed necessary for the public interest." In the later case of *Silz* v. *Hesterberg*, 211 U. S. 31, [53 L. Ed. 75, 29 Sup. Ct. Rep. 10], a similar claim was made, and the court held that the law (one prohibiting the possession of wild game during the close season, whether killed within or without the state) was not directed against commerce or any of its regulations, but only indirectly and remotely affected the operations of commerce, and was of obligatory force upon citizens within the territorial jurisdiction of the state. The court said: "That a state may not pass laws directly regulating foreign or interstate commerce has frequently been held in the decisions of the court. But while this is true, it has also been held in repeated instances that laws passed by the states in the exercise of their police power, not in conflict with laws of Congress upon the same subject, and indirectly or remotely affecting interstate commerce, are nevertheless valid laws." It is sought to draw a distinction between these cases and the statute here involved, in that our laws permit the shipment beyond the borders of the state of game killed within the state, thus making game, it is said, "articles of interstate commerce." We do not consider the distinction material. The difficulty with the argument is that we have not made wild game an article of interstate commerce in the full and unrestricted sense. For so long as it remains within this state, at least, it remains burdened with the conditions imposed for the purpose of protecting the game of the state, to the effect that it may be shipped only in certain ways. As to this the language of Mr. Chief Justice White in *Geer* v. *Connecticut, supra,* that such game "can never be the subject of commerce

except with the consent of the state *and subject to conditions which it may deem best to impose for the public good,"* is specially pertinent. Our own case of *Ex parte Maier,* 103 Cal. 476, [42 Am. St. Rep. 129, 37 Pac. 402], is also in point to the effect that there is in our law no unwarranted interference with interstate commerce.

The principles controlling the determination of the question just discussed are equally applicable to the claim that the state law here involved is an unlawful interference with the postal service of the United States. As said by respondent, there is no attempt here to regulate the postal establishment or in any way or degree to affect its operations. Looking to the proper protection of the game of the state for its people, the legislature has prohibited any person within the state from shipping it by parcel post. It must be assumed here that such provision is reasonably necessary to such proper protection. The sole purpose of the enactment is the protection of game for the people of the state. The most that can be said in this connection is that the law may indirectly and remotely affect the postal department by depriving it of this patronage and the consequent revenue which would be paid as postage. But this, we think, in view of the decisions we have referred to, cannot be held to make the law invalid as unlawfully interfering with the postal service. In a well-considered opinion, the court of common pleas of Northampton County, Pennsylvania, reached a similar conclusion as to a recent statute of that state which prohibited shipments of game by parcel post. (See *Commonwealth* v. *Reimel,* 44 Pa. Co. Ct. Rep. 557.)

We see no good ground upon which the statutory provision attacked may be held invalid.

The writ is discharged and the petitioner remanded to the custody of the sheriff of San Mateo County.

Shaw, J., Sloss, J., Melvin, J., Victor E. Shaw, J., *pro tem.,* and Wilbur, J., concurred.