[S. F. No. 8697.   In Bank.—June 3, 1918.]

## A. PALADINI et al., Petitioners, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

FISH AND FISHING — STATUTE — REGULATING PRICES — CONSTITUTIONAL LAW.—The act of the legislature known as the "State Fish Exchange Act," providing for the licensing of fishermen and those who sell fish, and authorizing the state market director to fix wholesale and retail prices of fish (Stats. 1917, p. 1673), is not violative of section 25 of article I of the constitution, declaratory of the right of the people to fish upon and from public lands of the state, etc.

ID.—PRIVATE OWNERSHIP OF FISH AND GAME—STATE'S POWER OF REGULATION.—Since fish and game are owned by the state and can become the subject of private ownership in a qualified way only, and can never be the subject of commerce except with the consent of the state, subject to conditions which it may deem best to impose for the public good, the people can alienate it on such terms as they choose to impose, and this power of regulation continues so long as such fish or game are the subject of trade or transfer.

ID.—PURPOSE OF SECTION 25 OF ARTICLE I OF THE CONSTITUTION—LOCAL LEGISLATION.—The principal purpose of section 25 of article I of the state constitution (added by amendment November, 1910), was to preserve to the people the right to fish upon the public lands of the state and to require that grants of land by the state should not be made without reserving to the people the absolute right to fish thereon, and the proviso authorizing the legislature to fix the season when, and the conditions under which, the different species of fish may be taken was evidently intended to leave the matter exactly as it was before the adoption of the amendment, except as it restricted the power to alienate public land without such reservation or to create private fisheries thereon; and the section gave no right to the people which they did not already have.

ID.—CONSTITUTION, ARTICLE IV, SECTION 25½—POWER OF LEGISLATURE—PROTECTION OF FISH AND GAME.—The obvious purpose of section 25½ of article IV of the constitution, empowering the legislature to "provide for the division of the state into fish and game districts" and to "enact such laws for the protection of fish and game as it may deem appropriate to the respective districts" (amendment adopted in November, 1902), was to remove the former restriction of article IV, section 25, subdivision 33, which prohibited the enactment of a local law "where a general law can be made applicable," and the section in no wise limits the sovereign power of the state over fish and game, or of the legislature to legislate concerning the

CLXXVIII Cal.—24

same, but, on the contrary, increases the legislative discretion by authorizing local laws on the subject.

Id.—Right to Fish—Nature of License—Power of State to Destroy. The license to fish is a privilege granted by the state, and may be taken away in the exercise of the police power.

Id.—State Market Director—Investigation Under State Fish Exchange Act—Order to Produce Books.—A proceeding by way of investigation by the state market director, under section 26 of the State Fish Exchange Act, is not criminal in its nature, and an order of the superior court compelling persons engaged in the business of fishing and selling fish to produce their books before the state market director is not in violation of the constitutional provision which prohibits a court or officer from requiring a defendant in a criminal case to furnish evidence against himself.

Id.—Power to Compel Production of Books — Limitation.—Where persons engaged in the business of fishing and selling fish at wholesale in California were ordered and subpoenaed to produce "the sales records and ledger accounts with your customers covering the period from the 20th of February, 1918, to February 28, 1918," the order and subpoena were entirely too broad, and beyond the jurisdiction of the state market director and of the superior court, and should have been confined to the production of books and documents relating to such fish business.

APPLICATION for Writ of Prohibition against the Superior Court of the State of California, City and County of San Francisco, and Honorable George A. Sturtevant, Judge of said court.

The facts are stated in the opinion of the court.

H. I. Stafford, and W. F. Stafford, for Petitioners.

Sapiro, Neylan & Ehrlich, for Respondents.

James A. Devoto, and Milton Marks, *Amici Curiae.*

WILBUR, J.—Petitioners seek a writ of prohibition to prevent the carrying out of an order of the superior court requiring them to produce before the respondent, Harris Weinstock, state market director, their ledger and sale account for the week February 20 to 28, 1918, and to prohibit the superior court from punishing petitioners for contempt of court in failing to comply with said order.

The respondent, Harris Weinstock, as state market director, is attempting to carry out the procedure provided in the law enacted by the legislature of this state in 1917 (Chap. 803, p. 1673, sec. 26), providing for the licensing of fishermen and those who sell fish, and authorizing the state market director to fix wholesale and retail prices of fish. It is first contended that the statute is unconstitutional and void, as being in violation of section 25, article I, of the constitution. This section reads as follows:

"The people shall have the right to fish upon and from the public lands of the state and in the waters thereof, excepting upon lands set aside for fish hatcheries, and no land owned by the state shall ever be sold or transferred without reserving in the people the absolute right to fish thereupon; and no law shall ever be passed making it a crime for the people to enter upon the public lands within this state for the purpose of fishing in any water containing fish that have been planted therein by the state; provided, that the legislature may by statute, provide for the season when and the conditions under which the different species of fish may be taken."

The petitioners claim that by this section "the people are given the constitutional right to fish in the navigable waters of the state." If there were no such constitutional provision, petitioners state the rule thus: "The fish belong to the people of the state of California. This is conceded. It must be so, that what they own, they may give away absolutely, or conditionally, with or without reservation." The rule with reference to the private ownership of fish and game is thus stated in the late case of *In re Frank Phoedovius,* 177 Cal. 238, [170 Pac. 412]: Fish and game "can only become the subject of ownership in a qualified way, and which can never be the subject of commerce except with the consent of the state and subject to conditions which it may deem best to impose for the public good." (See, also, *Ex parte Bailey,* 155 Cal. 472, [132 Am. St. Rep. 95, 31 L. R. A. (N. S.) 534, 101 Pac. 441]; *Ex parte Fritz,* 86 Miss. 210, [109 Am. St. Rep. 700, 38 South. 722]; *Ex parte Kenneke,* 136 Cal. 527, [89 Am. St. Rep. 177, 69 Pac. 261].) It is, therefore, evident that what the people of the state own they can alienate on such terms as they choose to impose, and that this power of regulation continues so long as such fish or game are the subject of trade or transfer. This legislative power was in no wise modified by the addition

of section 25, article I (*supra*), to the constitution. It is apparent that the principal purpose of this amendment, as stated in the *Matter of Application of Parra,* 24 Cal. App. 339, [141 Pac. 393], "was to preserve to the people the right to fish upon the public lands of the state, and to require that grants of land by the state should not be made 'without reserving to the people the absolute right to fish thereon.'" The proviso in the section authorizing the legislature to fix "the season when and the conditions under which the different species of fish may be taken" was evidently intended to leave the matter exactly as it was before the adoption of this amendment in November, 1910, except as it restricted the power to alienate public land without such reservation, or to create private fisheries thereon. This section gave no right to the people which they did not already have. We conclude, therefore, that the legislature had the right to provide a system for fixing the wholesale and retail prices for the sale of fresh fish, allowing "a reasonable compensation or profit to those engaged in the catching or selling of fish," as in the act provided.

*Amici curiae* call attention to the new section of the constitution (section 25½, article IV) adopted in November, 1902, to wit: "The legislature may provide for the division of the state into fish and game districts, and may enact such laws for the protection of fish and game therein as it may deem appropriate to the respective districts," and claim that the effect of this provision is to limit the power of the legislature to the "protection of fish and game." The obvious purpose of this amendment was to remove the former restriction of article IV, section 25, subdivision 33, which prohibited the enactment of a local law "where a general law can be made applicable," and in no wise limits the sovereign power of the state over fish and game, or of the legislature to legislate concerning the same. On the contrary, it increases the legislative discretion by authorizing local laws on the subject.

Petitioners claim that the right to fish is a property right, granted by license; that to take away such license is to deprive the petitioners of a property right, and therefore a proceeding looking to that end is in its nature criminal, and that to require the petitioners to produce papers containing evidence against themselves in such a criminal action is unconstitutional. It is sufficient to say that the license to fish is a privi-

lege granted by the state and may be taken away in the exercise of its police power. (See *Hevren* v. *Reed,* 126 Cal. 219, 222, [58 Pac. 536]; *Littleton* v. *Burgess,* 14 Wyo. 173, [2 L. R. A. (N. S.) 631, 82 Pac. 864]. See, also, *Lanterman* v. *Anderson,* 36 Cal. App. 472, [172 Pac. 625], wherein a petition for a hearing in this court was denied.) The proceeding before the state market director is not criminal in its nature, and the order compelling the petitioners to produce their books before the state market director was not in violation of the constitutional provision which prohibits a court or officer from requiring a defendant in a criminal case to furnish evidence against himself.

It is also claimed that the order to produce petitioners' books violates the constitutional provision prohibiting unreasonable searches and seizures. (Art. I, sec. 19, Cal. Const.; Fourth Amendment, U. S. Const.) Books and papers containing a record of the purchase and sale of fish, made since the above law of 1917 went into effect, are no longer private. They contain a record of the purchase and sale of the property of the state, by those having a qualified or conditional interest therein. By engaging in the fish business and applying for a license therefor petitioners, in effect, consented to the inspection of their books as in the law provided. To require the production of such books is not a violation of the constitutional provision in question. It is next claimed that before the state market director can take evidence on the question of the revocation of the petitioners' license to fish, it was essential that some proceeding should be pending before him for the revocation of such license, and that it should be alleged in some such petition so filed that the petitioners herein had violated the law in regard to the sale of fish at prices not authorized, and that until some such proceeding is filed the state market director had no jurisdiction to proceed, and that, therefore, the subsequent procedure by application to the superior court falls for lack of jurisdiction in the first instance. The law purports to give the state market director the right to inspect the books of all persons engaged in the business in which the petitioners are engaged. It also provides for the production of such books by subpoena. The purpose of such procedure is to enable the defendant, Weinstock, as state market director, representing the people of the state of California, to ascertain the conditions under which

fish are being sold, not only for the purpose of determining whether or not there have been violations of his orders fixing the price of fish, but also to ascertain what prices should be fixed.

As already stated, the petitioners, by engaging in the business of dealing in fish caught in the waters of the state, in effect consented to the inspection of their books by the state market director, as in the law provided, and the procedure here adopted for securing the presence of said books at the time of the examination of the question as to whether or not the petitioners had violated the provisions of the law with relation to the prices at which fish were sold was in strict accordance with the letter of the law, and there is no reason for interpolating into the law by construction a provision not found therein. Petitioners also claim that "too much power is delegated to this state market director and a power which cannot be delegated," but the only specific power pointed out under this head is that "section 8 provides that if the supply of fish in the judgment of the state market director is excessive or abnormal, the state market director may reduce the price of fish." This section seems merely to recognize the well-known law of commerce—the law of supply and demand—by which, in theory, at least, all prices are fixed. This provision, however, would not, in any event, render the whole law unconstitutional, and therefore, it is unnecessary to pass on this point.

Petitioners claim that the order to produce is not sufficiently definite, and is too broad in its terms. It is alleged by petitioner, A. Paladini, that he is engaged in the business of selling fish at wholesale in California and licensed so to do, and also that he is licensed to fish. If the order and subpoena to produce books complained of had been confined to books containing record of transactions in such fish business, between the dates specified, the same would have been sufficiently definite and certain, and in full compliance with the law. The order and subpoena, however, directs the petitioners herein to produce "the sales records and ledger accounts with your customers covering the period from the 20th of February, 1918, to February 28, 1918." The order and subpoena are, therefore, entirely too broad, and beyond the jurisdiction of the state market director and of the superior court. The order

should have been confined to the production of books and documents relating to such fish business.

Let the writ issue.

Sloss, J., Shaw, J., Melvin, J., Richards, J., *pro tem.*, and Angellotti, C. J., concurred.