[Crim. No. 2931. In Bank.—February 21, 1927.]

In the Matter of the Application of JAMES A. MAKINGS for a Writ of Habeas Corpus.

[1] FISH AND GAME — REGULATION OF SHIPPING OF CRABS — SECTION 626, PENAL CODE—CONSTITUTIONAL LAW — CRIMINAL LAW. — Section 626 of the Penal Code is not unconstitutional in permitting the shipment of crabs from one to other districts into which the state has been divided by said section, but prohibiting such shipment into the territory of the state outside said districts.

[2] ID.—SECTION 25½, ARTICLE IV, CONSTITUTION—PURPOSE OF.—The purpose of section 25½ of article IV of the constitution, providing that the legislature may divide the state into fish and game districts and enact such laws for the protection of fish and game therein as it may deem appropriate to the respective districts, was to remove the former restriction of article IV, section 25, subdivision 33, which prohibited the enactment of a local law where a general law could be made applicable; and it in nowise limits the sovereign power of the state over fish and game, or the legislature to legislate concerning the same, but, on the contrary, it increases the legislative discretion by authorizing local laws on the subject.

[3] ID.—DIVISION OF STATE INTO DISTRICTS—REGULATION OF CERTAIN DISTRICTS — POWER OF LEGISLATURE. — There is nothing in the language of section 25½ of article IV of the constitution to indicate that the legislature is not given power to make regulations applicable to two or more districts into which it is authorized by said section to divide the state, without making the same applicable to the state generally.

[4] ID.—REMEDIAL LEGISLATION — STATUTORY CONSTRUCTION. — Section 25½ of article IV of the constitution is remedial in character

and should be given a liberal construction; and in construing th section the court should consider the subject matter with which it deals in its endeavor to ascertain the true meaning of the language used.

[5] ID.—PURPOSE OF CONSTITUTION.—It was the purpose of the amendment of the constitution by the adoption of section 25½ of article IV to take from local authorities the right to regulate the fish and game of the state and to invest such power exclusively in the legislature, and it was designed to clothe the legislature with ample power to adequately protect the fish and game of the state.

[6] ID.—PURPOSE OF LEGISLATION—PROTECTION AND USE OF FISH AND GAME.—One of the purposes determining the legislature in th enactment of laws with reference to the fish and game of the stat: is to permit the largest use of fish and game compatible with the reasonable protection thereof.

---

(1) 26 C. J., p. 633, n. 79 New, p. 641, n. 9.    (2) 26 C. J., p. 624, n. 97 New.    (3) 26 C. J., p. 625, n. 8.    (4) 12 C. J., p. 701, n. 75, 80. p. 703, n. 97; 26 C. J., p. 624, n. 97 New.    (5) 26 C. J., p. 623, n. 92, p. 624, n. 97 New.    (6) 26 C. J., p. 624, n. 97 New.

APPLICATION for a Writ of Habeas Corpus to secure release of petitioner charged with unlawfully shipping crabs. Writ discharged.

The facts are stated in the opinion of the court.

Puter & Quinn and Marc F. Morrison for Petitioner.

B. D. Marx Greene, Ralph W. Scott and Henry C. Greer, District Attorney, for Respondent.

CURTIS, J.—Petition for writ of *habeas corpus*. The petitioner is in the custody of the constable of Sausalito township, county of Marin, under a warrant of arrest issued out of the justices' court of said township upon a complaint charging that on or about the twelfth day of March, 1926, he unlawfully transported and carried crabs from fish and game district number 1½ into the county of Marin, state of California.

Under the authority conferred upon the legislature by section 25½ of article IV of the constitution the state has been divided into some sixty-seven fish and game districts. By section 628 of the Penal Code it is provided: "(c) Every

person who ships or offers for shipment or who transports or carries any species of crab from fish and game districts one and one-half, five, six, seven, seven 'A,' eight and nine, either to a point outside of the state or into any part of the state other than in districts one and one-half, five, six, seven, seven 'A,' eight and nine, or who holds any crabs in live cars within said fish and game districts, is guilty of a misdemeanor.

"For the purposes of this act a live car shall be any box, crate or pen in which live crabs are kept."

[1] The seven districts mentioned in said subdivision (c) are situated in the northwestern part of the state and they form one compact and contiguous body of land and water. No part of the county of Marin is in any of said districts. It is apparent, therefore, that the complaint against petitioner charges a violation of this subdivision (c) of section 628 of the Penal Code. It is the contention of petitioner that this section of the Penal Code, in so far as it attempts to prohibit the transportation or shipment of crabs from the fish and game districts therein enumerated into any other part of the state other than into said seven districts named in said section is unconstitutional and void. His contention is based upon the fact that a number of fish and game districts are grouped together in said section and a general prohibition as to shipment of crabs therefrom is made or attempted to be made applicable to the territory composed of all said districts, with the result that crabs from any one of said districts may be shipped into any or all of the other districts of said group, but cannot be shipped into any other part of the state. Petitioner admits that it is perfectly legal for the legislature to provide that crabs shall not be shipped from one fish and game district into any other part of the state, but contends that the legislature is without power, by grouping a number of districts together or in any other manner, to provide that crabs or any other kind of fish or game may be shipped from one district into another district or into a group of districts and prohibit their shipment into the remaining districts of the state. [2] By section 25½ of article IV of the constitution, "The legislature may provide for the division of the state into fish and game districts, and may enact such laws

for the protection of fish and game therein as it may deem appropriate to the respective districts.'' This section was incorporated into the constitution by an amendment adopted by the people in 1902, and ''The obvious purpose of this amendment was to remove the former restriction of article IV, section 25, subdivision 33, which prohibited the enactment of a local law 'where a general law can be made applicable,' and in nowise limits the sovereign power of the state over fish and game, or of the legislature to legislate concerning the same. On the contrary, it increases the legislative discretion by authorizing local laws on the subject.'' (*Paladini* v. *Superior Court,* 178 Cal. 369, 372 [173 Pac. 588]; *In re Marincovich,* 48 Cal. App. 474, 483 [192 Pac. 156].)

[3] Petitioner asserts that by this amendment to the constitution the legislature is given authority to divide the state into fish and game districts and make any other legislation applicable to any one of said districts, but that it has no power to make regulations applicable to two or more of said districts without making the same apply to the state generally. We find nothing in the language of this constitutional provision that would indicate that it should be given such a narrow construction. Neither is petitioner's contention supported by any of the authorities cited in the argument of counsel or in the briefs filed herein. The cases relied upon by petitioner for this purpose, in so far as this state is concerned, are *Paladini* v. *Superior Court,* 178 Cal. 369 [173 Pac. 588], *In re Cencinino,* 31 Cal. App. 241 [160 Pac. 167]; *In re Marincovich,* 48 Cal. App. 474 [192 Pac. 156], and *In re Mascola,* 25 Cal. App. 92 [142 Pac. 903]. The Paladini case, as we have before noted, decided, among other things, that the obvious purpose of section 25½ of article IV ''was to remove the former restriction of article IV, section 25, subdivision 33, which prohibited the enactment of a local law 'where a general law can be made applicable,' and in nowise limits the sovereign power of the state over fish and game, or of the legislature to legislate concerning the same. On the contrary, it increases the legislative discretion by authorizing local laws on the subject.'' In the Cencinino case the court held that by this constitutional amendment the power theretofore exercised

by counties and other local authorities to regulate fish and game had been transferred from such authorities to the legislature and the sole power to protect the fish and game of the state was now conferred upon the legislature. In *In re Marincovich, supra,* it was contended that section 636 of the Penal Code, which sought to prohibit the use of a certain kind of fishing net in fish and game district number 20 was unconstitutional as special and local legislation. It was held that section 25½ of article IV of the constitution, citing the Paladini case as authority, had removed certain restrictions against special and local legislation by specially authorizing local legislation for the protection of fish and game. In the Mascola case the petitioner was charged with a violation of the penal statute prohibiting the use of a trawl net for fishing in fish and game district number 6. This statute made it unlawful to use such a net in district number 6 and in the waters of Monterey Bay. It was claimed that the statute was illegal for the reason that it included not only district number 6 but the waters of Monterey Bay, which were included in and formed a part of district number 5. The court held that even conceding that that part of the statute referring to Monterey Bay was beyond the powers of the legislature to enact, as it was an attempt to legislate as to a part only of an established fish and game district, its illegality would not affect the provisions of the statute referring to district number 6, of which the petitioner was charged with a violation. Petitioner also relies upon a number of authorities of other jurisdictions, particularly the cases of *Jonesboro, etc.,* v. *Adams,* 117 Ark. 54 [174 S. W. 527], and *State* v. *Higgins,* 51 S. C. 51 [38 L. R. A. 561, 28 S. E. 15]. The former of these cases was decided by the supreme court of Arkansas and the latter by the supreme court of South Carolina. These authorities are of little assistance to us for the reason that in neither of these states is there a constitutional provision similar to section 25½ of article IV of our constitution.

[4] This section of the constitution is remedial in character and should be given a liberal construction. "It is well settled that a remedial statute must be liberally construed, so as to effectuate its object and purpose. Although due regard will be given the language used, such an act

will be construed, when its meaning is doubtful, so as to suppress the mischief at which it is directed, and to advance or extend the remedy provided, and bring within the scope of the law every case which comes clearly within its spirit and policy. Clearly, the remedial effect of provisions should not be impaired by construction, . . . '' (23 Cal. Jur. 801.) In construing this section of the constitution the court should consider the subject matter with which it deals in its endeavor to ascertain the true meaning of the language used. [5] As we have already seen, it was the purpose of this amendment to the constitution to take from local authorities the right to regulate the fish and game of the state and to invest such power exclusively in the legislature. In so doing the powers of the legislature to protect the fish and game of the state were increased over those previously entrusted to that body. As we read the section, we think it most apparent that its purpose was to clothe the legislature with ample power to adequately protect the fish and game of the state. This was to be accomplished by authorizing the legislature to divide the state into fish and game districts and to enact such laws for the protection of the fish and game as the legislature might deem appropriate for the respective districts. The fish and game of the state are made up of various kinds and species, differing from each other in so many respects that it would be difficult, if not impossible, to enumerate such differences. On account of this great variety of kind and species it was necessary that the regulations adopted by the legislature for the protection of the fish and game be in some measure commensurate with the various kinds and species of fish and game existing in the different parts of the state. Very often in a given territory there may exist a number of different varieties of fish and game, each requiring special legislation in order that they may be properly protected. It may be necessary on account of the peculiar and varied conditions under which the deer in this district are found to divide the area into a number of different game districts in order to properly protect the deer found therein. On the other hand, the conditions under which the quail in this territory are found appear to be the same in the several parts of this territory. It is necessary, however, on account of the deer therein, to divide

this territory into a number of districts. Such a regulation would not be necessary when it comes to the protection of quail, but after the territory has been divided into the several districts for the protection of the deer, there is nothing in this constitutional provision which prevents the legislature from enacting one general regulation as to quail throughout said territory and make it applicable to all the districts therein. In our opinion a reasonable construction of section 25½ of article IV clearly implies that the power to pass such an enactment has been left to the discretion of the legislature.

[6] There are also other considerations which might determine the legislature in the enactment of laws, the purpose of which is to protect the fish and game of the state. One of such considerations is the desire on the part of the legislature to permit the largest use of fish and game compatible with the reasonable protection thereof. The legislature undoubtedly found it necessary to divide the territory comprising the seven districts enumerated in subdivision (c) of section 628 of the Penal Code into seven districts in order to adequately protect all the fish and game found therein. It further found that to permit the crabs taken from the waters within such territory to be shipped into and used in the several districts comprising the same would not endanger the permanent supply of crabs produced in said waters, but to permit the crabs of said territory to be shipped generally throughout all parts of the state would result in their depletion and possibly in their final destruction. Under such conditions it was undoubtedly within the power of the legislature to enact such legislation as would protect the crabs of said district and at the same time to permit the use of the crabs produced therein by the largest possible number of people of the state. It is conceded by petitioner that it would have been perfectly legal for the legislature to have provided that crabs caught in any one of said districts should not be shipped or transported out of the district in which they were caught. Under such a regulation petitioner would have had no right to transport crabs from said district number 1½, or from any of the other districts into the county of Marin. How is he damaged or injured by the present law which permits the crabs from district number 1½ to be used in the other dis-

tricts of said territory as well as in district number 1½ ?
Petitioner claims that he is discriminated against by being
denied the right to ship crabs out of said district number
1½, while the people in the other districts are given this
right. He would be discriminated against to the same ex-
tent by a statute prohibiting the shipment of crabs out of
district number 1½. He concedes that this would be legal
because the legislature has the right to pass such legisla-
tion. As we have already shown, the legislature also has
the right to prohibit the shipment of crabs from the terri-
tory comprising said seven districts. It follows, therefore,
that such discrimination, if it can be called such, is not
illegal.

It is well established in this state that the legislature
has most extensive powers over the fish and game within
its jurisdiction. As was said by this court in *Ex parte
Maier*, 103 Cal. 476, 483 [42 Am. St. Rep. 129, 37 Pac.
402, 404]: "The wild game within a state belongs to the
people in their collective, sovereign capacity; it is not the
subject of private ownership, except in so far as the people
may elect to make it so; and they may, if they see fit, ab-
solutely prohibit the taking of it, or any traffic or com-
merce in it, if deemed necessary for its protection or preser-
vation, or the public good. To this extent it is conceded
that the state may go. But it is contended that to go
further, and prohibit the sale of game lawfully killed else-
where and brought here as private property is in effect to
destroy private property, and that this is going beyond
a proper exertion of the police power. While it is true
that the power to regulate is not the power to destroy, in
its absolute sense, it is, nevertheless, true that the right
to regulate frequently and as a necessary sequence carries
with it the right to so control and limit the use or en-
joyment of private property as to amount to its destruction."

This language has been frequently referred to with ap-
proval (*People* v. *Haagen*, 139 Cal. 115 [72 Pac. 836];
*Ex parte Kennke*, 136 Cal. 527 [89 Am. St. Rep. 177,
69 Pac. 261]; *In re Phoedovius*, 177 Cal. 238, 241 [170
Pac. 412]; *Geer* v. *State of Connecticut*, 161 U. S. 519, 527
[40 L. Ed. 793, 16 Sup. Ct. Rep. 600, see, also, Rose's U. S.
Notes]). In view of these considerations we are firmly
of the opinion that the regulation enacted by subdivision

(c) of section 628 of the Penal Code does not contravene any provision of the constitution and that it is a legal and valid enactment of the legislature. It follows, therefore, that petitioner's imprisonment is legal and the writ should be discharged. It is therefore ordered that the petitioner be remanded and the writ discharged.

Seawell, J., Richards, J., Shenk, J., Waste, C. J., Preston, J., and Langdon, J., concurred.