[Crim. No. 191. Fourth Appellate District.—April 16, 1936.]

In the Matter of the Application of JOSEPH GIAMPE for a Writ of Habeas Corpus.

Lloyd M. Tweedt, J. F. Harvey, Arch E. Ekdale and Derby, Sharp, Quinby & Tweedt for Petitioner.

W. F. Menton, District Attorney, and J. E. Walker, Deputy District Attorney, for Respondent.

BARNARD, P. J.—Application for writ of *habeas corpus.*
The petitioner was taken into custody on a charge of violating section 844 of the Fish and Game Code as amended in 1935 (Stats. 1935, p. 1205), it being charged that he unlawfully operated a net, other than a bait seine, for the purpose of taking fish within that portion of District 19 lying between the northern boundary of Orange County and San Mateo Point at or near the southern boundary of said county, and extending oceanward two miles from the line of mean high tide.

It is petitioner's contention that section 844 of this code is unconstitutional and void as local and special legislation, and that in adopting the same the legislature exceeded the authority conferred upon it by section 25½ of article IV of the Constitution. This provision authorizes the legislature to provide for the division of the state into fish and game districts and to enact such laws for the protection of fish and game

as it may deem appropriate to the respective districts. The questions here presented are whether the legislature, under the authority thus granted, may enact laws applying only to a portion of a fish and game district so established, and whether the legislature, in amending section 844 in 1935, intended to and did create a new district.

The first question, although suggested in the case of *In re Mascolo,* 25 Cal. App. 92 [142 Pac. 903], seems not to have been decided. Section 25½ of article IV of the Constitution was adopted for the purpose of removing the restriction which formerly prohibited local and special laws where a general law could be made applicable and to permit local and special laws protecting fish and game, in certain sections of the state, to be set apart for the purpose, in order to meet varying conditions in these areas. (*Paladini* v. *Superior Court,* 178 Cal. 369 [173 Pac. 588]; *In re Makings,* 200 Cal 474 [253 Pac. 918].)

We think the language used in this section of the Constitution and the very purpose which is apparent in the section indicate a specific intention to limit the authority thus given to enact such local laws, and that it was intended that this freedom from the former restriction should extend only so far as to permit the enactment of such laws as might be deemed appropriate to an entire district as formed in accordance with the authority given. The section recognizes the need of different regulations of this nature in different parts of the state, and gives the legislature the widest discretion in forming such districts, which may be made small enough to cover any area in which special legislation may be needed. In giving this right to form districts and to enact laws appropriate thereto, the section plainly excludes smaller areas and fails to authorize local legislation affecting a portion of a district or anything less than the district which is made the only basis for an exception to the general rule.

In discussing this section of the Constitution, the court said, in *In re Makings, supra:*

''As we read the section, we think it most apparent that its purpose was to clothe the legislature with ample power to adequately protect the fish and game of the state. This was to be accomplished by authorizing the legislature to divide the state into fish and game districts and to enact such laws for the protection of the fish and game as the legislature

might deem appropriate for the respective districts. The fish and game of the state are made up of various kinds and species, differing from each other in so many respects that it would be difficult, if not impossible, to enumerate such differences. On account of this great variety of kind and species it was necessary that the regulations adopted by the legislature for the protection of the fish and game be in some measure commensurate with the various kinds and species of fish and game existing in the different parts of the state. Very often in a given territory there may exist a number of different varieties of fish and game, each requiring special legislation in order that they may be properly protected. It may be necessary on account of the peculiar and varied conditions under which the deer in this district are found to divide the area into a number of different game districts in order to properly protect the deer found therein. On the other hand, the conditions under which the quail in this territory are found appear to be the same in the several parts of this territory. It is necessary, however, on account of the deer therein, to divide this territory into a number of districts.''

The reasoning there used supports our conclusion here. Using the same illustration, the larger district which would be appropriate for laws affecting quail would also suffice for the adequate protection of deer if the legislature had the power to pass different laws affecting various portions of the district.

The respondent argues that the 1935 amendment to section 844 of the Fish and Game Code had the effect of creating a new and independent fish and game district, although the amendment does not designate the described portion of District 19 as a new district or give to the same a number or other designation.

While the power of the legislature to redistrict the state or form a new district may be conceded, we think that no such a result was here accomplished. In the Fish and Game Code, as adopted in 1933, division II is devoted to the creation of fish and game districts. In the sections under that division the entire state is divided into a number of districts, each being numbered and its boundaries described. Division IV of this code contains regulations applying to the various districts, one of which was section 844, which then provided that

it was unlawful to use a net for the purpose of taking fish in the waters of the state within a radius of four miles from San Juan Capistrano Point in Orange County. In view of the fact that division II of this code expressly purported to divide the entire state into fish and game districts as set forth in that division, each with an appropriate designation, it could hardly be argued that it was intended by the legislature to create a new and additional district by section 844 as then adopted. The amendment to section 844, adopted in 1935, did not purport to create a new district and did not mention or purport to amend any part of division II, under which the various districts in the state had been created. The area affected by this amendment was not given a number or other designation and the same still remains a part of District 19, under the express terms of one of the sections included in division II. Moreover, the title of the act amending section 844 contained nothing, by reference or otherwise, which could be said to relate to such a matter as the creation of a new fish and game district. We conclude that section 844, as amended in 1935, did not have the effect of creating a new district. ▋ It follows from what has been said that section 844 is unconstitutional and void as not coming within the exception to the general rule authorized by section 25½ of article IV of the Constitution.

It is ordered that petitioner be discharged and his bail exonerated.

Marks, J., and Jennings, J., concurred.