[Civ. No. 5337.   Fourth Dist.   May 3, 1956.]

J. E. COOLEY, Appellant, v. STATE BOARD OF FUNERAL DIRECTORS AND EMBALMERS et al., Respondents.

---

*Assigned by Chairman of Judicial Council.

L. Kenneth Say and Lewis W. Boies, Jr., for Appellant.

Edmund G. Brown, Attorney General, Dan Kaufman, Deputy Attorney General, and Frank Bottaro for Respondents.

GRIFFIN, J.—This action, under section 1094.5 of the Code of Civil Procedure, was commenced by petitioner and appellant, doing business as Valley Funeral Home, against respondents State Board of Funeral Directors et al., to review its order revoking petitioner's license as a funeral director after hearing by respondent board. The accusation is that prior to and on February 28, 1955, petitioner violated rule 1218 of the California Administrative Code (tit. 16, chap. 12, State Board of Funeral Directors and Embalmers) in that he kept and maintained his embalming table, preparation room and appliances used in embalming human dead bodies in an unclean and unsanitary condition, and that his mortuary was generally unclean and unsanitary.

Petitioner appeared at the hearing before the board without counsel on April 11, 1955. He was informed of his right to counsel and he elected to proceed without any. Thereafter, witnesses were sworn and examined and petitioner cross-examined the witnesses at great length. The field representative of the board testified that he visited petitioner's place of business on many occasions beginning with September 28, 1954, and that on one occasion Mrs. Cooley gave him permission to enter the office but claimed she could not find the key to the preparation room. After waiting in the chapel for some time he sensed a powerful odor of decomposition so tried the door to the preparation room and found it unlocked. Accompanied by an attendant of petitioner he proceeded into the room and found maggots on the floor which had been coming from a decomposing infant's body. The embalming table, hopper and wall surrounding it were in a very dirty condition. He was unable to contact petitioner that day due to his absence. He left a warning note that if the conditions were not corrected by 8 a. m. the following day it would be brought to the attention of the local health authorities. The next morning he found petitioner in the process of cleaning it up and advised him the room was extremely unsanitary and did not meet the requirements of the board. He inspected it again on October 18th. Petitioner was not present. He inquired about the key and was told it was not available so

he inspected the chapel and it appeared to be in a "very dirty and disorderly condition." He was unable to gain admission into the preparation room so he acquired the services of a police photographer who took pictures of it through one of the back windows. About that time petitioner appeared on the scene and refused to open the preparation room to the inspector claiming that he was suspicious of the inspector taking the pictures and stated that he did not have the key. The inspector offered to pay for a new lock if he would break it but petitioner refused. The pictures were then identified and received in evidence without objection. According to the testimony these photographs showed what appeared to be brown blood stains on the wall, newspapers scattered around, a dead body under a covering, cosmetics used in the profession scattered around, and a dresser "mussed up" and "quite dirty." The picture of the anteroom showed cardboard boxes littered with various items and rags on the floor. In the chapel there appeared to be considerable dirt on the floor such as flower petals, etc. In the anteroom were very dirty extra caskets in storage.

After several previous inspections, the inspector returned and on February 23, 1955, entrance to that room was refused by an employee in the absence of petitioner, claiming that the key could not be found. By the aid of the police and the photographer the door was unlocked, and in the presence of petitioner's employee photographs were taken. One dead human body was found stacked on top of another. Empty bottles and other things were lying around, and this room appeared to be in the same cluttered condition as before depicted. On the pulpit was found a bloody or filthy knife and a dirty gauze mask. No water was in the hydrant and no facilities were available for washing one's hands. The instruments lying around did not appear to have been cleaned between one case and another.

A licensed physician and pathologist testified that on the 10th day of February he went to the premises and performed an autopsy; that the place was so dirty he changed his clothes in his car and used his own instruments; that there was no water with which he could wash his hands and this condition existed on several prior occasions.

Petitioner, at the hearing and after being informed of his rights, testified that on occasions the inspector came to the parlor for inspection; that he was so busy with his turn at coroner cases he did not have time to give proper attention

to it; and that all of his employees knew where the key to the property room was kept but sometimes they took it with them on calls. He identified the photographs as representing the general conditions on the days they were taken but claimed rush of business for the dereliction. He admitted that the inspector had warned him on previous occasions and that he had promised to install an exhaust fan and screens on the windows to prevent the flies from coming in but had not done it. Upon this evidence and with the consent of petitioner, the matter was submitted with the result indicated.

On the hearing before the superior court, the transcript and exhibits, including all photographs, were received in evidence by stipulation. Petitioner was represented by counsel at the time. Petitioner then produced a witness for the claimed purpose of showing that the evidence against him was obtained by illegal search and seizure under article I, section 19 of the Constitution of California. (*People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905], decided April 27, 1955, and *People* v. *Berger*, 44 Cal.2d 459 [282 P.2d 509].

Further showing by petitioner was made that neither he nor his employees nor the embalmer had knowledge that the two corpses were stacked one on top of the other, as depicted in the picture. One of petitioner's employees testified the inspector asked to inspect the preparation room on February 23, 1955, and that he went for the key to let him enter but the inspector had already unlocked the door. Apparently, acquiescence to enter the room was given by the employee.

■  No constitutional objections were made by petitioner at the hearing to the introduction of the photographs in evidence or the evidence based thereon. However, no such objections need be there made since this hearing was had prior to the decision in *People* v. *Cahan*, *supra*; and *People* v. *Kitchens*, 46 Cal.2d 260 [294 P.2d 17], decided February 24, 1956.

■  Looking through a window, taking pictures of what can be seen, does not constitute an unreasonable search. (*People* v. *Martin*, 45 Cal.2d 755 [290 P.2d 855].)

■  It appears that at the trial on July 14, 1955, when petitioner was represented by counsel, and subsequent to the Cahan decision, no such objections were made when the transcript, exhibits and photographs were offered and received in evidence. In fact, it was stipulated they might be received and considered by the court. Under these circumstances, petitioner should not be heard to complain. (*People* v. *Maddox*,

decided February 28, 1956, 46 Cal.2d 301 [294 P.2d 6].) In the absence of evidence to the contrary, it will be presumed that the officers acted legally. (*People* v. *Farrara*, 46 Cal.2d 265 [294 P.2d 21].) Regardless of the conclusions here reached the trial court fully considered the evidence on this subject and specifically found that none of the evidence introduced at the hearing or at the trial was obtained in violation of any constitutional right of the petitioner; that applying for and receiving a license to carry on the business at that address implied a consent to allow the investigator to make a reasonable inspection of the premises, which was done, and he accordingly waived his right to object under the circumstances related; that petitioner was afforded a full and fair hearing and there was sufficient competent evidence that he violated section 7703 in relation to section 7606 of the Business and Professions Code, and rule 1218, *supra.* Section 7607 of the Business and Professions Code provides:

"The board may inspect the premises in which the business of a funeral director is conducted or where embalming is practiced."

The great weight of authority in this country, including the federal courts, upholds the right of reasonable inspection on the part of the state and federal governments, of premises operated under a license from the state or federal government. (*Maloney* v. *American I. M. & H. Assn.*, 119 Cal.App.2d 319, 326 [259 P.2d 503]; *Financial Indem. Co.* v. *Superior Court*, 45 Cal.2d 395 [289 P.2d 233]; *Paladini* v. *Superior Court*, 178 Cal. 369, 373 [173 P. 588]; *Bartlett Frazier Co.* v. *Hyde*, 65 F.2d 350, 352; *Karr* v. *Baldwin*, 57 F.2d 252, 255; *Bowles* v. *Misle*, 64 F.Supp. 835, 843; and cases cited in 88 A.L.R. 351, 353-358; *Shapiro* v. *United States*, 335 U.S. 1, 23 [68 S.Ct. 1375, 92 L.Ed. 1787]; *Plainos* v. *State* (Tex.Cr.App., 1937), 100 S.W.2d 367.)

The evidence fully supports the finding of the trial court. Even if it could be sufficiently maintained that some of the photographs taken and evidence produced at the trial were not rightfully admitted before the Board of Funeral Directors or the trial court there was sufficient evidence to support the finding without the use of this evidence. (*Dyment* v. *Board of Medical Examiners*, 93 Cal.App. 65, 69 [268 P. 1073]; *Minaker* v. *Adams*, 55 Cal.App. 374, 377 [203 P. 806].)

It appears that during the hearing before the administrative body, after waiving his right to an attorney, and after consenting to proceed without the services of one, petitioner

then stated: "I think I am getting in deep water and I think I need an attorney." Thereupon, the hearing officer informed petitioner that he was sorry but it was too late now, and he would not be permitted to change his mind because that was something he should have considered before he came into the hearing, and the respondent replied: "Yes, sir," and continued to further cross-examine the witness.

At the outset, petitioner waived his right to an attorney. He had the aid of counsel in his hearing before the trial court where the same issues were again presented. No prejudicial error resulted. (*Jones* v. *Della Maria,* 48 Cal.App. 171 [191 P. 943].)

Order affirmed.

Barnard, P. J., and Mussell, J., concurred.