Appellate Department, Superior Court, Los Angeles

[Crim. A 7727. Feb. 2, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. IRVIN
WHITE, Defendant and Appellant.

Arnold Levin for Defendant and Appellant.

Evelle J. Younger, District Attorney, Harry Wood, Chief Deputy District Attorney, and Wilber A. Sweeters, Deputy District Attorney, for Plaintiff and Respondent.

Thomas C. Lynch, Attorney General, and William L. Zessar, Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Respondent.

VASEY, J.—This is an appeal from a conviction after trial by court of one count of a violation of the California Administrative Code, title 17, group 2, section 294(a). The complaint alleges that the defendant did "administer and operate a Convalescent Hospital licensed for 18 beds, and not having a qualified person to be on duty during the day and at least Forty (40) hours per week and on call when the nurse who is regularly the supervisor is not on duty or on call and provisions for supervisory coverage shall be made for vacation and relief periods."

On March 20, 1967, Marvin L. Brandon, an investigator for the Los Angeles County Health Department, held an office conference with the defendant who was the operator of a convalescent hospital under a license issued by the California Department of Health. At this conference the investigator and the defendant discussed alleged violations of the Administrative Code which the investigator stated had been found on March 3d. He advised the defendant that he would re-inspect the convalescent hospital in about thirty days.

On May 8th, the date of the violation alleged in count 1 of the complaint, he went to the hospital to conduct a routine inspection, entering the hospital under the provisions of section 1419 of the Health and Safety Code, without a search warrant. The defendant was not present at the time and the investigator talked with an employee. As a result of the inspection so made, the investigator testified he found no one on the premises who was licensed as a registered nurse or a licensed vocational nurse.

There were five other counts in the complaint, all of which were dismissed or resulted in acquittal. We are concerned only with count 1. The defendant, on this count, was placed on six months summary probation, on condition he pay a fine of $50 plus $6 and that he obey all laws. The defendant appeals from the "judgment" which we treat as an appeal from the order granting probation.

The defendant-appellant relies on three contentions on this appeal:

1. That the evidence obtained was the result of an illegal search and seizure in that the inspector entered the premises without proper cause, without a search warrant and without consent;

2. That the evidence was insufficient to sustain the finding of guilt; and

3. That the evidence did not show ''intent'' on the part of the appellant.

As we consider the first point to be the truly important point in this case we will take up the points in reverse order.

Concerning the third contention, appellant concedes he has found no case in point. He contends there must be evidence of specific intent or mens rea to sustain the conviction. Then he cites cases holding that belief that a girl was over 18 years of age is a defense to a charge of statutory rape and that a reasonable belief in the existence of a valid divorce is a defense to a charge of bigamy, and that a reasonable belief that a minor was over the age of 21 years is a defense to a charge of selling intoxicating liquor to a minor.

The defendant is correct in citing these cases as authority that the elements referred to constitute a defense to the accusation. None of the cases cited holds that the belief or knowledge of the defendant is a necessary element in the prosecution's case. Thus in *People* v. *Vogel* (1956) 46 Cal.2d 798 [299 P.2d 850], cited by appellant, and involving a charge of bigamy and the defense of belief in the existence of dissolution of the prior marriage by divorce, the Supreme Court stated: ''Therefore the intent with which the unlawful act was done must be proved as well as the other material facts stated in the indictment; which may be by evidence either direct or indirect, tending to establish the fact, or by inference of law from other facts proved. When the act is proved to have been done by the accused, if it be an act in itself unlawful, the law in the first instance presumes it to have been intended, and the proof of justification or excuse lies on the defendant to overcome this legal and natural presumption. . . . Thus, the prosecution makes a prima facie case upon proof that the second marriage was entered into while the first spouse was still living [citing cases], and his bona fide and reasonable belief that facts existed that left the defendant free to remarry is a defense to be proved by the defendant.''

The appellant does not contend that he was refused an opportunity to present lack of intent as an affirmative

defense. He merely argues that the prosecution should have been required to prove his specific intent as part of its affirmative case. And it is not apparent to us how he could urge lack of intent to fail to have a properly qualified person in charge for he testified that on May 8, 1967, he did know that he did not have a proper person supervising the hospital. (Rep. Tr. p. 40, lines 7-9.)

 This admission also detracts markedly from the second contention that there was insufficient evidence to sustain the conviction. Moreover, we agree with respondent that the testimony of the inspector that he could not find a person with the required qualifications on duty at the hospital during the day is evidence sufficient to sustain the conviction. It is not as contended by appellant a mere conclusion. It is evidence of the very fact constituting the violation and is sufficient to sustain the finding of guilt.

 This brings us to the first and most difficult contention urged by appellant as a ground for reversal.

This presents the question of whether or not the entry on the hospital premises by the health inspector was prohibited by the rule enunciated in the recent cases of *Camara* v. *Municipal Court of the City & County of San Francisco* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727], and *See* v. *City of Seattle* (1967) 387 U.S. 541 [18 L.Ed.2d 943, 87 S.Ct. 1737].

In the *Camara* case the court clearly held that administrative searches of private residences by building inspectors without a warrant and over the objection of the occupant are prohibited by the Fourth Amendment made applicable to the states by the Fourteenth Amendment. Such search cannot be justified by ordinance or statutory authorization in view of the constitutional protection referred to.

In the *See* case this principle was applied to commercial premises, in reversing a conviction for denying admittance to a fire inspector. Absent consent, a search warrant is needed for an administrative entry onto those portions of commercial premises which are not open to the public. In stating the extent of its holding the Supreme Court used this interesting language: ''We do not in any way imply that business premises may not reasonably be inspected in many more situations than private homes, nor do we question such accepted regulatory techniques as licensing programs which require inspections prior to operating a business or marketing a product. Any constitutional challenge to such programs can only be resolved, as many have been in the past, on a case-by-case

basis under the general Fourth Amendment standard of reasonableness."

We are confronted with the question of applying this language to an inspection of a hospital licensed by the state by an inspector charged with seeing that the laws designed for the protection of hospital patients are enforced. We also are faced with how literally the court intended to use the word "prior." Did the court mean that health and other related inspections can only be made initially on the commencement of the operation and never thereafter unless a warrant be obtained? For instance, may a bank examiner examine a bank before it opens its doors for business and before it has a dollar of the public's money entrusted to it and never enter the doors thereafter without a warrant? Are we to understand that a health inspection may be made of a slaughter house or other food processing plant before it opens its doors for business, without a warrant, but that as soon as food processing begins and the real need for supervision arises a warrant is required? If this is the rule which is to be applied to restaurants or hotels where food is being served the public, taking "her out to a restaurant once a week" loses some of its appeal. And if no inspection without a warrant may be made of a hospital, once it begins operations, to secure the health, safety, even the lives of the helpless and the aged or infirm, we should be told so expressly, rather than by implication.

Hospitals, including this one, are required to be licensed by the state. (Health & Saf. Code, § 1400 et seq.) "Every hospital for which a license has been issued shall be periodically inspected by a duly authorized representative of the State [Health] Department. . . ." (Health & Saf. Code, § 1407.) "Any officer, employee, or agent of the State Department of Public Health may enter and inspect any building or premises at any reasonable time to secure compliance with, or to prevent a violation of, any provision of this chapter." (Health & Saf. Code, § 1419.) The purpose of licensing and inspection as required is declared to be "to provide for the better protection of the public health . . . by providing for state licensing, inspection, regulation, and supervision . . . of hospitals." (Stats. 1945, p. 2667; *Yanke* v. *State Dept. of Public Health* (1958) 162 Cal.App.2d 600 at p. 604 [328 P.2d 556].)

The case of *Cooley* v. *State Board of Funeral Directors & Embalmers* (1956) 141 Cal.App.2d 293 [296 P.2d 588], although decided before *Camara* and *See* would appear to be

helpful. This case involved evidence obtained by a field representative of the board, after refusal of entry to the funeral parlor. Section 7607 of the Business and Professions Code, like the law involved here, authorized inspection of the premises in which a licensee conducted the business of a funeral director or where embalming is practiced. The court said in part: ". . . applying for and receiving a license to carry on the business at that address implied a consent to allow the investigator to make a reasonable inspection of the premises. . . . The great weight of authority in this country, including the federal courts, upholds the right of reasonable inspection on the part of the state and federal governments, of premises operated under a license from the state or federal government. (Citing cases.)"

While dealing with the right of inspection of books and papers, the court in *Paladini* v. *Superior Court* (1918) 178 Cal. 369 at p. 373 [173 P. 588] held: "By engaging in the fish business and applying for a license therefor petitioners, in effect, consented to the inspection of their books as in the law provided." Writ of prohibition was granted because the demand was too broad.

The case of *People* v. *Lisner* (1967) 249 Cal.App.2d 637 [57 Cal.Rptr. 674] involved a prosecution on a charge of receiving stolen property. The property was stolen liquor found by a search of a barroom by a representative of the Alcoholic Beverage Control Department and police officers. The court held the search to be authorized partly because public bars are given less protection than dwellings and private places of business and partly because sections 25753 and 25755 of the Business and Professions Code give agents and police officers power of inspection similar to the provisions earlier referred to as applying to hospitals.

In *Karr* v. *Baldwin* (1932) 57 F.2d 252, the court found no Fourth Amendment violation in a statute authorizing inspection of books and records of an employment agency required to be licensed and to keep such books and records. The case was found to be like that of pawnbrokers, express companies and liquor vendors.

In *United States* v. *Crescent-Kelvan Co.* (1948) 164 F.2d 582 under the Federal Food, Drug and Cosmetic Act it was held that no violation of the Fourth Amendment was involved in inspecting food or drug establishments during business hours when authorized by the statute.

In *Cooper's Express, Inc.* v. *Interstate Commerce Com.*

(1964) 330 F.2d 338, under 49 U.S.C.A. section 320 allowing inspection of books, records, accounts, and buildings, the court held there was no Fourth Amendment violation in the inspection of documents required by law to be kept.

While each of these cases was decided before *See* v. *City of Seattle, supra,* it would appear that that case, broad as it is, cannot be understood as intended to overturn state and federal decisions dealing with searches or seizures made pursuant to state or federal licensing and inspection statutes. The rule seems to be firmly established that searches or seizures pursuant to licensing statutes which require inspection are valid and not subject to constitutional objection. The *Camara* and *See* cases were under municipal housing and fire ordinances applicable to all homes and buildings and not limited to licensed businesses so thoroughly involved in the public health as the hospital here involved.

It is interesting to note that in footnote 4 in the *See* case the court observes: ''In *United States* v. *Cardiff*, 344 U.S. 174 [97 L.Ed. 200, 73 S.Ct. 189], this Court held that the Federal Food, Drug, and Cosmetic Act did not compel that consent be given to warrantless inspections of establishments covered by the Act. (As a result, the statute was subsequently amended. . . .)''

*United States* v. *Cardiff* was decided in 1952, four years later than *United States* v. *Crescent-Kelvan Co., supra*. This is explained by realizing that the *Crescent-Kelvan* case recites that a request for permission was required by the statute.

We believe that the case before us could be affirmed solely on the basis that there is no evidence whatever that the health inspector here went beyond that portion of the premises open to the public. The court in *See* v. *Seattle, supra,* expressly confined its prohibition to entry ''upon the portions of commercial premises which are not open to the public.'' We, however, base our opinion not only on the ground that no entry was shown on the non-public portions of the hospital premises, but also on the more fundamental premise that acceptance of a license to operate a hospital is an implied consent to such supervision and inspection as is required by the licensing statute involved.

For the reasons herein stated, we affirm the order granting probation.

Whyte, P. J., and Wong, J., concurred.