[Civ. No. 49730. Second Dist., Div. Four. Apr. 11, 1978.]

ELMER W. MILLER, Plaintiff and Appellant, v.
MARIO G. OBLEDO, as Director, etc., Defendant and Respondent.

**COUNSEL**

W. Michael Sterling and Karl K. Ransom for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Samuel E. Spital, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**FILES, P. J.**—This mandamus proceeding was brought in the superior court to review a decision of the State Department of Health suspending petitioner, a licensed optometrist, from participating in the California Medical Assistance Program (Medi-Cal) for a period of one year. ██ The issues argued on this appeal relate only to the legality of an inspection of petitioner's records which led to the disciplinary proceeding. We have concluded that the inspection was authorized by Welfare and Institutions Code sections 14124.1 and 14124.2, as a part of a regulatory system, and that an inspection so authorized did not violate the Fourth Amendment to the federal Constitution or California Constitution, article I, section 19 (now § 13).

On May 2, 1974, State Investigator Caldwell went to petitioner's office. There he met petitioner and requested copies of records relating to optometric services provided to 14 named patients. Petitioner telephoned his attorney, who then spoke with the investigator and told him that the requested copies "could be released." Petitioner then told the investigator to come back the following day to pick up the copies. Petitioner stated he would be away, but an employee would turn over the copies.

On May 3 the investigator came back to the office and requested petitioner's employee to give him copies of records of 55 additional patients. The employee complied.

On May 6 the investigator telephoned petitioner and told him what he had obtained, and asked permission to keep the additional records. Petitioner said that was "permissible."

On May 16, at the investigator's request, petitioner supplied copies of records of seven additional patients.

Since we have concluded that the inspection of the records was authorized by statute, we do not reach petitioner's contention that his consent did not include the copying of the 55 patients' records on May 3.

Welfare and Institutions Code section 14124.1 required each provider of health care services under Medi-Cal to maintain records of each service rendered.[1]

Welfare and Institutions Code section 14124.2 authorized the department to visit the premises of any provider and examine the books and records pertaining to the services rendered.[2]

No issue is raised as to the authority of Investigator Caldwell to represent the department. The theory urged by petitioner is that the inspector was required to obtain a subpoena duces tecum to enforce the department's right to examine the records of a health care provider. The authorities relied upon by petitioner do not involve inspections made under the authority of a statutory system such as that which applies here.

Several Court of Appeal decisions have applied the principle that a licensing system may require the licensee to submit to reasonable inspection, and that such an inspection may lawfully be made without a warrant or subpoena or express consent of the licensee.

---

[1]Section 14124.1, as of May 1974, read as follows: "Each provider of health care services rendered to any beneficiary under this chapter shall keep and maintain records of each such service rendered, the beneficiary to whom rendered, the date, and such additional information as the department may by regulation require. Records herein required to be kept and maintained shall be retained by the provider for a period of three years from the date the service was rendered." (Stats. 1970 ch. 1030, § 3, p. 1841.)

[2]Section 14124.2, as of May 1974, read as follows: "The department during normal working hours may make any examination of the books and records of any provider pertaining to services rendered to any beneficiary under this chapter, and may visit and inspect the premises or facilities of any provider it may deem necessary to carry out the provisions of this chapter and regulations adopted thereunder." (Stats. 1970, ch. 1030, § 4, p. 1842.)

In *Cooley* v. *State Bd. of Funeral Directors* (1956) 141 Cal.App.2d 293 [296 P.2d 588] investigators made a forced entry into the preparation room of a licensed funeral home, and there found evidence which led to revocation of the license. In rejecting the licensee's claim that the search was illegal, the court said at page 298: "The great weight of authority in this country, including the federal courts, upholds the right of reasonable inspection on the part of the state and federal governments, of premises operated under a license from the state or federal government."

In *People* v. *Lisner* (1967) 249 Cal.App.2d 637 [57 Cal.Rptr. 674] the defendant was convicted of receiving stolen property, upon evidence obtained in a search of premises licensed to sell liquor. The court said at pages 641-642: "The entry, the examination of the records of Roma Inn and the subsequent search of the premises were statutorily authorized by sections 25753 and 25755 of the Business and Professions Code, giving agents and local police officers wide powers to visit and to inspect the premises of liquor licensees. The search was not illegal, with or without Lisner's consent, . . ." (Fn. omitted.) (See also *People* v. *Grey* (1972) 23 Cal.App.3d 456, 460 [100 Cal.Rptr. 245]; *People* v. *Conway* (1974) 42 Cal.App.3d 875, 891 [117 Cal.Rptr. 251]; *Cowing* v. *City of Torrance* (1976) 60 Cal.App.3d 757, 763-765 [131 Cal.Rptr. 830].)

In *United States* v. *Biswell* (1972) 406 U.S. 311 [32 L.Ed.2d 87, 92 S.Ct. 1593], the court upheld a search conducted pursuant to a federal gun control act, which required a licensed dealer to maintain specified records and make them available for inspection at reasonable times. Violation of that statute was a crime. The court said at pages 314-315 [32 L.Ed.2d at pp. 91-92]: "When the officers asked to inspect respondent's locked storeroom, they were merely asserting their statutory right, and respondent was on notice as to their identity and the legal basis for their action. Respondent's submission to *lawful* authority and his decision to step aside and permit the inspection rather than face a criminal prosecution is analogous to a householder's acquiescence in a search pursuant to a warrant when the alternative is a possible criminal prosecution for refusing entry or a forcible entry. In neither case does the lawfulness of the search depend on consent; in both, there is lawful authority independent of the will of the householder who might, other things being equal, prefer no search at all. . . . In the context of a regulatory inspection system of business premises that is carefully limited in time, place and scope, the legality of the search depends not on consent but on the authority of a valid statute." (Fn. omitted.) (Italics in original.)

That reasoning is applicable here. The controls which the state has established for health care providers under the Medi-Cal program are analogous to the licensing systems which were the basis of the cited cases. The statutory requirement that providers maintain records and submit them for inspection by the department was a proper element of the regulatory system.

Welfare and Institutions Code section 14124.2 contained reasonable limitations of time, place and scope. The only records which petitioner was required to reveal were those relating to his treatment of patients for whose care the department was responsible. The state's concern both for the welfare of the patients and for the public fisc justified the requirement that such records be maintained and offered for inspection by the responsible state agency.

Since we hold that the inspection was lawful, we do not reach the question whether unlawfully obtained evidence would have been admissible in this disciplinary proceeding.

The judgment is affirmed.

Kingsley, J., and Bigelow, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.